1

2

3                    *POSTED ON WEBSITE*
                     *NOT FOR PUBLICATION*

4

5              **UNITED STATES BANKRUPTCY COURT**

6              **EASTERN DISTRICT OF CALIFORNIA**

7

8

9

10   In re                          )   Case No. 20-21910-E-13
                                    )   Docket Control No. FF-8
11   TIMOTHY TOBIAS TROCKE,          )
                                    )
12              Debtor.             )
                                    )
13   ———————————————————————————————)

14   **This Memorandum Decision is not appropriate for publication.**
     **It may be cited for persuasive value on the matters addressed.**
15

16              **MEMORANDUM OPINION AND DECISION**

17          Roger Anderson, Trustee of the RWA Trust dated March 14, 2014 ("Creditor"), filed a Proof

18   of Claim ("POC"), which has been amended twice, asserting a claim secured by real property (the

19   "Property") of the Debtor in this bankruptcy case. In the process, Timothy Tobias Trocke, the

20   Chapter 13 Debtor ("Debtor"), filed his objection to Original Proof of Claim 2-1 and then to First

21   Amended Proof of Claim 2-2. Creditor then filed Second Amended Proof of Claim 2-3 while this

22   Contested Matter was pending. As Creditor amended the claim and filed further Notices of

23   Postpetition Mortgage Fees, Expenses, and Charges, this Objection was then expanded to include

24   the Second Amended Proof of Claim and Notices, with evidence and argument presented in support

25   thereof by Creditor and opposition by Debtor.

26          Creditor has provided the court with detailed information computing the Claim as of

27   February 2, 2021. These are in the Mortgage Proof of Claim Attachments to First Amended Proof

28   of Claim 2-2 and Second Amended Proof of Claim 2-3. Using that information, making adjustments

1   for legal fees not allowed as part of Creditor's Claim, the court computes Creditor's Claim balance,

2   after application of the $115,000.00 in proceeds from the sale of collateral and the $1,337.80

3   Chapter 13 Trustee distribution, to be $44,773.04 as of February 2, 2021. With the 18% per annum

4   interest on the claim, which is compounded monthly, Creditor's Claim is $48,076.29 as of July 1,

5   2021, with the July per diem interest being $24.04 on the July 1, 2021 amount of the claim.

6          The above does not include any increases or reductions for attorney's fees or costs which

7   either party may be allowed a prevailing party in Phase 1 or Phase 2 of the Objection proceedings

8   as provided in Federal Rule of Civil Procedure 54, as incorporated into the Federal Rules of

9   Bankruptcy Procedure, and Federal Rules of Bankruptcy Procedure 7054 and 9014(c).

10         In this Decision, the court uses the word "allowed" "or not allowed" as terms to mean

11  whether the  fees at issue are part of Creditor's Claim pursuant to the terms of the contract and

12  applicable California law, in determining the "allowance of a claim" for Creditor  as provided in

13  11 U.S.C. § 502.  The court is not "allowing fees" as it would for a professional as provided in

14  11 U.S.C. § 330, or bifurcating unreasonable fees pursuant to 11 U.S.C. § 506(b) from an allowed

15  secured claim.

16

17                          **OVERVIEW OF CLAIM FILING AND**
                            **OBJECTION PROCEEDINGS**

18         Creditor filed Original Proof of Claim 2-1 on May 5, 2020.  On October 21, 2020, Creditor

19  filed a Notice of Postpetition Mortgage Fees, Expenses, and Charges, which states only a lump sum

20  of $1,912.50 for legal fees incurred on April 25, 2020.  No billing statement or itemization

21  identifying the legal services, the hourly rate of the attorney, and the time billed, or other

22  information beyond the total dollar amount.  Debtor filed an Objection to Original Proof of Claim

23  2-1 and the October 21, 2020 Notice.  Dckt. 170.  Creditor then filed a Second Notice of Postpetition

24  Mortgage Fees, Expenses, and Charges on December 21, 2020 (Exhibit 1, Dckt. 185).

25         On December 29, 2020, Debtor filed a Supplemental Objection to include First Amended

26  Claim 2-2 and the December 21, 2020 Second Notice of Postpetition Mortgage Fees, Expenses, and

27  Charges.  Dckt. 182.

28         Creditor filed his Opposition to the Objection and Supplemental Objection on January 19,

2021.  Dckt. 190.

On January 19, 2021, Creditor also filed a Third Notice of Postpetition Mortgage Fees, Expenses and Charges.  Detailed itemizations for legal fees are included as an attachment to the January 19, 2021 filed Notice.  This Third Notice, which is also attached to First Amended Proof of Claim 2-2, provides a billing summary of attorney's fees and an invoice listing the different charges related to the loan since August 2019 through December 2020.

Then with the Objection to Original Proof of Claim 2-1 and this Contested Matter relating thereto pending, Creditor filed First Amended Proof of Claim 2-2 on January 26, 2021, which included the billing records for the attorney's fees sought.  Though First Amended Proof of Claim 2-2 still was not properly completed, it did provide the six (6) pages of attorney's fees billings for the period August 7, 2018, through January 21, 2021.

As addressed below and stated in this court's prior ruling and order (Civil Minutes, Order; Dckts. 211, 213) for Phase 1 of the Objection, the court sustained the Objection to Original Proof of Claim 2-1 and the Notices of Postpetition Mortgage Fees, Expenses, and Charges; and continued the hearing for Phase 2 of the Objection as it applied to First Amended Proof of Claim 2-2 to April 20, 2021.

Then, on April 19, 2021, the day before the scheduled April 20, 2021 hearing on Phase 2 of the Objection, Creditor filed the Second Amended Proof of Claim 2-3, continuing in his rolling filing of amended claims and additional.

This rolling filing of proofs of claim forms and notices by Creditor could have added to the confusion, but the Parties constructively used such to create the two phase Objection process for this Contested Matter.

**Applicable Law Regarding
Objection to Claim**

Section 502(a) provides that a claim stated in a Proof of Claim is allowed unless a party in interest objects.  Once an objection has been filed, the court may determine the amount of the claim after a noticed hearing. 11 U.S.C. § 502(b).  It is settled law in the Ninth Circuit that the party objecting to a proof of claim has the burden of presenting substantial factual basis to overcome the

1  *prima facie* validity of a proof of claim, and the evidence must be of probative force equal to that

2  of the creditor's proof of claim. *Wright v. Holm (In re Holm)*, 931 F.2d 620, 623 (9th Cir. 1991);

3  *see also United Student Funds, Inc. v. Wylie (In re Wylie)*, 349 B.R. 204, 210 (B.A.P. 9th Cir. 2006).

4  Once a party has objected to a proof of claim, the creditor asserting the claim may not

5  withdraw the claim except on order of the court. FED. R. BANKR. P. 3006.

6  Federal Rule of Bankruptcy Procedure section 3001(c)(2) requires that a creditor include or

7  attach certain documents with their proof of claim in order to substantiate their claim. Specifically,

8  FRBP section 3001(c)(2)(A) requires a creditor to provide "an itemized statement of the interest,

9  fees, expenses, or charges." Additionally, FRBP 3001(c)(2)(B) requires a creditor to provide "a

10  statement of the amount necessary to cure any default as of the date of the petition." Finally, section

11  3001(c)(2)(C) requires a creditor with a secured claim over a debtor's principal residence to include

12  specific detailed information, including: (1) "an itemized statement of the interest, fees, expenses,

13  or charges shall be filed with the proof of claim" and "the amount necessary to cure any default as

14  of the date of the petition shall be filed with the proof of claim."

15  For a Notice of Postpetition Mortgage Fees, Expenses and Charges, the Bankruptcy Rules

16  impose a similar requirement. Federal Rule of Bankruptcy Procedure 3002.1(c) provides:

17

18  (c) Notice of Fees, Expenses, and Charges. The holder of the claim shall file and
    serve on the debtor, debtor's counsel, and the trustee a notice itemizing all fees,
    expenses, or charges (1) that were incurred in connection with the claim after the

19  bankruptcy case was filed, and (2) that the holder asserts are recoverable against the
    debtor or against the debtor's principal residence. The notice shall be served within

20  180 days after the date on which the fees, expenses, or charges are incurred.

21  Creditor advances an interesting argument in the context of this Contested Matter and

22  presentation of evidence. Creditor asserts that he has now created in this Contested Matter a *prima*

23  *facie* valid claim and, therefore, Debtor must offer further evidence to counter the *prima facie*

24  presumption. Debtor advances an equally interesting argument that since Creditor was substantially

25  deficient on providing the required information with Original Proof of Claim 2-1 and Amended

26  Proof of Claim 2-2, and the several Notices of Postpetition Mortgage Fees, Costs, and Expenses,

27  such claims must be disallowed and there is nothing for the court to adjudicate. Neither party is

28  correct.

Beginning with the Debtor, the filing of claims and the claim objection process is one to identify and determine the correct claim a creditor is to be paid.  It is not a ministerial act which is either done correctly or incorrectly, and if not done correctly in the filing of the proof of claim, then the court barks "No Claim For You!" with no consideration of evidence in this Contested Matter.

As discussed above and in COLLIER ON BANKRUPTCY, when a proof of claim is filed it constitutes *prima facie* evidence of the validity of the claim.  If objected to and there is a crack in the documentation of the claim, then the rights are adjudicated through the Contested Matter process under the Federal Rules of Bankruptcy Procedure.

Objection by Party in Interest

Section 502(a) and Bankruptcy Rule 3001(f) provide that a properly filed proof of claim constitutes *prima facie* evidence of the validity and the amount of the claim unless a "party in interest" objects. Once an objection is made, the determination of whether the objection is well founded is a judicial function to be exercised by the court.

Trustees and chapter 11 debtors in possession, as well as chapter 12 and chapter 13 debtors, are parties in interest who may object to proofs of claim. A "creditor of a general partner in a partnership that is a debtor in a case under chapter 7" is a party in interest by specific inclusion in section 502(a). In addition, in the context of a chapter 11 case in particular, the term "party in interest" expressly includes "the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee."

4 COLLIER ON BANKRUPTCY ¶ P 502.02 (16TH 2021).

Here, the Debtor started with Creditor not providing the itemization necessary to determine whether there were reasonable and necessary attorney's fees that would be part of Creditor's Claim. Debtor was successful on that Phase 1 issue.  Creditor eventually provided information in response to this Objection.  Now, as discussed in this Decision below, Debtor's objection in Phase 2 of the Objection is to specific charges sought to be included as part of Creditor's Claim in this case.  These specific challenges and evidence in opposition sufficiently break the *prima facie* presumption, and put the burden of proving the claim on Creditor.[1]  As further addressed below, the evidence shows

---

[1] This allocation of the burden of proof is discussed in 9 Collier on Bankruptcy ¶ 3001.09[2].  *See also, Lundell v. Anchor Construction Specialists, Inc.*, 223 F.3d 1025, 1039 (9th Cir. 2000), which states:

"If the objector produces sufficient evidence to negate one or more of the sworn

5

that Debtor's objections in Phase 2 has merit and portions of the fees requested are not allowed.

<h2 style="text-align:center">DECISION ON PHASE 1 OBJECTION</h2>

On February 2, 2021, the court conducted the hearing on the Objection and Supplemental Objection to Original Proof of Claim 2-1, the October 21, 2020 Notice of Postpetition Mortgage Fees, Expenses, and Charges, and the second December 21, 2020 Notice of Postpetition Mortgage Fees, Expenses, and Charges.

The court sustained the Objection to Original Proof of Claim 2-1, the October 21, 2020 Notice of Postpetition Mortgage Fees, Expenses, and Charges, and the December 21, 2020 Second Notice of Postpetition Mortgage Fees, Expenses, and Charges, and issued an Interim Order thereon; Order, Dckt. 213; for Phase 1 of this Objection to Claim proceedings for the "evolving" Proofs of Claim filed by Creditor. The court's Interim Order determines:

> **IT IS ORDERED** that the Objections to both Proof of Claim 2-1 and the Notice of Postpetition Mortgage Fees, Expenses, and Charges (filed on December 21, 2020) based on the failure to provide the itemizations of fees, costs, and expenses as required by the Federal Rules of Bankruptcy Procedure are sustained. The court so orders pursuant to Federal Rule of Civil Procedure 56(a), (g), and Federal Rules of Bankruptcy Procedure 7056 and 9014(c), and the final order for such relief shall be in one final order issued after the additional hearings below.

Interim Order, p: 1; Dckt. 213. The court's Phase 1 Findings of Fact and Conclusions of Law are set forth in the Civil Minutes from the February 2, 2021 hearing, Dckt. 211, and incorporated herein by this reference. A copy of the Phase 1 Findings of Fact and Conclusions of law, and the Interim Order are attached hereto as Addendum E.

The Interim Order further provides for the Phase 2 proceedings, stating:

> **IT IS FURTHER ORDERED** that the hearing is continued to 2:00 p.m. on April 20, 2021, for the court to conduct further proceedings on these Objections to address [in] this Contested Matter the itemizations for Proof of Claim 2-1 and the Notice of Postpetition Mortgage Fees, Costs, and Expenses ("Notice of Fees") that Creditor filed in Opposition to the Objections. Such procedure, as agreed by the Parties at the February 2, 2021 hearing, will reduce costs and expenses, and avoid Creditor having to file an amended claim, refile the itemizations, and necessitate, if

---

facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence." *In re Consol. Pioneer*, 178 B.R. at 226 (quoting *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir. 1992)). The ultimate burden of persuasion remains at all times upon the claimant. *See In re Holm*, 931 F.2d at 623.

1    Debtor believes objections to any of the itemized amounts is warranted.

2    *Id.*

3          Debtor's Objections to Original Proof of Claim 2-1 and the two Notices of Postpetition

4    Mortgage Fees, Costs and Expenses were sustained in their entirety, the court determining that the

5    filing of the Objection was necessary to address the deficient filing of Original Proof of Claim 2-1

6    and deficient Notices of Postpetition Mortgage Fees, Costs and Expenses.  Only after Debtor filed

7    the original Objection and Supplemental Objection did Creditor begin providing the required

8    documentation and basis for the attorney's fees and expenses asserted.

9                        **DECISION ON PHASE 2 OBJECTION**
                         **TO FIRST AMENDED PROOF OF CLAIM 2-2**
10                       **AND SECOND AMENDED PROOF OF CLAIM 2-3**

11         Following the Phase 1 Objection proceeding, Creditor has twice amended Proof of Claim 2,

12   resulting in the most recent which is identified as Second Amended Proof of Claim 2-3 on the

13   Clerk's Claim Register.  Creditor has provided detail concerning the fees and expense asserted to

14   be part of his Claim in this case.  The court now considers those fees, costs, and expenses, and the

15   Debtor's objections thereto.

16   **Review of Phase 2 Objection**

17         Debtor filed a Supplemental Objection to the attorney's fees and costs as itemized in the

18   Notice of Postpetition Mortgage Fees, Expenses and Charges filed on January 19, 2021 and as part

19   of Creditor's First Amended Proof of Claim 2-2 filed on January 26, 2021.  Dckt. 216.

20         In Phase 2, Debtor reviews and repeats the objection history in this case and the deficiencies

21   in the earlier proofs of claim filed and Notice of Postpetition Mortgage Fees, Costs, and Expenses

22   in the Supplemental Objection.  The Parties, and the court, have moved beyond the shortcomings

23   and amendments, and now have the presentation of evidence which provides Creditor's best case

24   for the court to determine the correct amount of Creditor's Claim in this case.

25         Debtor first challenges the reasonableness of the fees, the documentation of the legal

26   services, and the amounts charged.  Supp. Objection, ¶ 8; Dckt. 216.  The objection grounds to the

27   legal fees sought by Creditor are that the fees were:

28         A.      unnecessary duplication of services;

7

B.      for the education of both Creditor's attorneys;

C.      multiple block billing entries;

D.      numerous "admin" fees;

E.      attorney fees incurred with respect to Creditor's refusing to allow the sale of the property subject to unreasonable terms;

F.      fees incurred in opposing the Objection to Claim; excessive, unreasonable and overcharged fees, and

G.      incurred because of the Creditor's attorneys' inability to complete and document a proper Proof of Claim.

*Id*. (There are two references to a section "5" in the Supplemental Objection, so the court has used letter paragraph designations for clarity.)

Debtor asserts that Creditor has presented his "complete statements" for all legal services with the Original and Amended Proofs of Claim (POC 2-1, 2-2). Therefore, based on these "complete statements," all amounts for attorney's fees should be disallowed because the "complete statements" did not provide the required itemization. *Id*., ¶ 9.

While Debtor may believe that the asserted "complete statements" for the attorney's fees are "incomplete" and should *per se* be disallowed, in this Contested Matter the court has been provided with the billing statements that Creditor relies upon in proving this claim, which the court shall use in determining what attorney's fees and costs are properly, based on the evidence, included in Creditor's Claim.

It is asserted that amending Original Proof of Claim 2-1 to state additional attorney's fees should be treated as an untimely proof of claim. Debtor does not explain how amending a proof of claim should be barred by the court. *Id*., ¶ 10.

With respect to the alleged improper "Block Billing," Debtor identifies the following examples:

19.  Attorney Marisol Nagata makes extensive use of block billing and "review documents." For example, the second entry on 4/10/2020 is titled "Draft Documents" and contains the following text: "Review Ch 13 Docket for Case No. 20-21910 (Debtor's filings remain incomplete) Prepare and efile Request to be Added to Courtesy Electronic Notification (NEF). Draft and send email to Client re; Bankruptcy Status." Different activities are lumped together so that it is not possible to ascertain the attorney's actions or the actual time expended. It also sounds like

administrative tasks are lumped in with the legal work.

20. Again, on May 1, 2020, Nagata has a substantial block billing entry called "Draft Documents" which includes a review of various documents, preparation of drafts and "Exhibit Cover Page, Certificate of Service. Prepare exhibit documents." The total hours for this entry are 4.6 and it is not possible to tell how much of this time was devoted to what are clearly administrative tasks.

21. And on June 3, 2020, there is block billing for 2.2 hours that includes multiple activities including "Certificate of Service." A reading over of the time entries confirms that when Nagata prepares documents she usually also bills for Certificate of Service and preparation of exhibits. See the Nagata time entries of 8/30, 9/3, 9/11, and 10/1/2020.
. . .
23. Block billings are highlighted for the convenience of the Court and Creditor's Counsel. It includes a total of $11,265.00 in charges that are too combined to be able to separate out what services were separately done and the charges for each. Where there are block charges, they should be denied due to lack of specificity.

*Id*. ¶¶ 10, 20, 21, 23.

In Paragraph 25 of the Supplemental Objection, Debtor challenges $10,647.50 in billings charged by Creditor's former attorney of record, Ms. Nagata, and additional counsel brought in while the objection was pending, Mr. Normandin.

Debtor directs the court to Exhibit F, in which Debtor challenges billings by Ms. Nagata as improper "Block Billing." Exhibit F, Dckt. 223, 224. There are many highlighted items - some for very short periods of time, others for longer periods of time.

As the court discusses, Debtor conflates "Block Billing" with billing of acts within a discrete task or project that the attorney is involved in during a time period. Many of the alleged "Block Billings" are for very small periods of time, and, presumably, if broken out into distinct, separate billing tasks, the time billed might well be greater (many attorneys having a minimum of one or two tenths of an hour for each task performed).

Debtor also objects to specific billing relating to the Objection to Claim, on which Debtor has prevailed on Phase 1 of these proceedings, stating that all of the amounts should be disallowed. Exhibit G, p.: 4-9, Dckt. 225.

Debtor objects to Creditor attempting to collect attorney's fees for deficient and incomplete proofs of claim being filed, which deficiencies led to the Objection and Supplemental to Objection to Claim of Creditor being filed. Debtor also asserts that there are duplicate services being provided

as between Ms. Nagata and Mr. Normandin, and their respective firms.

Debtor further points to various "administrative services," identifying them on Exhibit I (Dckt. 226). Debtor identifies four non-lawyer persons who are billing Creditor for their "legal services." These are Michael Mosquera, Marie Espadilla, Stephanie DeLucase, and Adeline Tungate. Sup. Obj. ¶¶ 34, 35, 36. The court addresses these administrative and clerical charges below.

**Creditor's Supplemental Response**

Creditor filed a Supplemental Response asserting that Debtor has failed to rebut the *prima facie* validity of the claim, which includes the attorney's fees and costs incurred, and that Debtor failed to show that the fees are prejudicial to his case. Creditor admits that its Original Proof of Claim 2-1 "suffered from a failure to itemize the exact expenses and charges associated with its claim, . . . ." Creditor Supplemental Response, p. 2:5-7; Dckt. 231. However, with First Amended Proof of Claim 2-2, which was then followed by Second Amended Proof of Claim 2-3, it is asserted that Creditor has now cured such deficiencies, provided the itemization, and thus Creditor's Proof of Claim should be allowed. *Id.*, p. 1:7-11. As addressed above and below, merely because an itemization was provided, whether as part of the Proof of Claim or as evidence in this Contested Matter, such does not preemptively make it contractually reasonable, necessary, and part of an obligation owed by the Debtor.

Creditor contends that it is difficult to follow Debtor's objection but that as it pertains to Debtor's specific objection to "Block Billing," Creditor argues that the April 10, 2021 entry used as an example by Debtor is not "block billing," but an appropriate description of interrelated work for a reasonable amount of time spent on the task described by an identified attorney. Creditor argues the same applies to the 4.5 hours spent by counsel in reviewing Debtor's Chapter 13 Plan and schedules and the drafting of an Objection to Debtor's Plan. Creditor states that the entries fully comply with Business & Professions Code § 6148(b) and the standards in the legal community.

As to the administrative tasks Debtor objects to, Creditor asserts that if the attorney indeed completes such tasks and has stated under oath that she did, then this is work performed by the attorney that may be included as attorney's fees. (As discussed below, it was not an attorney who

1   was billing for administrative tasks, but clerical staff.)  Creditor stands by former counsel's and

2   former counsel's clerical staff's billing entries as correct statements of reasonable and necessary

3   work performed in the case, and appears to believe that such should be sufficient in light of the

4   specific grounds stated in the Objection.

5       Thus, Creditor requests that Debtor's objection be overruled and Creditor's Claim in the

6   amount of $188,389.76 (included projected legal fees relating to the Objection to Claim) be allowed

7   in its entirety.

8   **Debtor's Reply**

9       Debtor filed a Reply on March 30, 2021, contending that Creditor failed to address the

10  relevant issue at hand: that Creditor is entitled to reasonable attorney's fees and costs (or whether

11  the fees as listed are appropriate charges) and that Creditor seems to believe that Creditor can avoid

12  review of all postpetition attorney's fees and costs where Ninth Circuit cases specifically address

13  that the *prima facie* argument does not resolve the reasonableness of attorney's fees.

14      As to whether the fees are prejudicial to Debtor, Debtor asserts that while $20,000.00 to

15  $30,000.00 may not seem prejudicial to a bank or large company, such amounts to a person in a

16  Chapter 13 are "whopping amount of money and feels very prejudicial!"  It is unclear why, if

17  enforceable, a civil obligation owed by Debtor would not be allowed "merely" because the dollar

18  amount would provide the Debtor with financial challenges.

19      Debtor argues that in looking at reasonableness of the fees, the court may look at any

20  individual fees to help in making this determination and points the court to various specific

21  circumstances.  One such circumstance listed by Debtor is a billing for 1.6 hours where the actual

22  hearing of Debtor's matter lasted 22 minutes, according to Debtor.  Debtor refers to this as

23  "padding" and is concerned that if this misrepresentation can be found, all of her statements as to

24  the billing statements may be put into question.  Debtor also points the court to $6,650.00 of

25  attorney's fee billed by the Prenovost, Normandin, Dawe & Rocha firm, Creditor's current attorneys,

26  where the billing statement fails to list the names of the attorneys who provided the services, their

27  position or legal credentials, and as they were attached as part of the billing for Creditor's successor

28  attorneys, counsel Nagata is unable to testify as to those fees and services.

Debtor further argues that the Prenovost, Normandin, Dawe & Rocha firm entries may be duplicative fees of counsel Nagata's work and thus not reasonable as such entries seem to cover the firm educating themselves and getting "up to speed" on the case and the law. Debtor turns to the reasonableness of block billing where Debtor argues that although block billing may be allowed in California, bankruptcy courts in the Ninth Circuit normally reject it on the theory that it does not allow the judge to properly evaluate the reasonableness of the charges. For this proposition, Debtor points the court to several cases including: *In re Leonard Jed Co.*, 103 B.R. 706,713 (Bankr. D. Md. 1989); *Castro v. Chang Sup Han (In re Chang Sup Han)*, Nos. 2:11-bk-30025 RK, 2:11-ap-02632 RK, 2015 Bankr. LEXIS 3210, at *15 (Bankr. C.D. Cal. Sep. 22, 2015); *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007); and *In re Reece*, No. 4:19-bk-03836-BMW, 2020 Bankr. LEXIS 530 (Bankr. D. Ariz. Feb. 26, 2020). Debtor's Reply, p. 11-12; Dckt. 236.

Debtor also turns to reasonableness of billing for clerical work. Debtor refers to *In re Serrato*, 2017 Bankr. LEXIS 4406 (Bankr. C.D. Cal. 2017), arguing that the court in that case stated that work done by clerical assistants is normally included in the overhead that is already part of the hourly rate. Debtor concludes, asserting that since Creditor did not address this point, then Creditor had conceded that clerical work should not be paid by the Debtor as attorney's fees under the contract.

**Determination of Reasonable Attorney's Fees
and Expenses Claimed by Creditor**

Here, Creditor is seeking to recover contractual attorneys' fees for having to enforce its rights in the Note and Deed of Trust. With respect to a creditor's right to recover postpetition attorney's fees, Congress provides in 11 U.S.C. § 506(b):

> (b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose.

Creditor's Claim has been asserted in the amount of $183,094.00, as stated in the Second Amended Proof of Claim, 2-3, filed on April 19, 2021. Debtor has sold Creditor's collateral for $235,000.00, which is significantly in excess of Creditor's Claim amount. Sale Order, Dckt. 180.

The Sale Order provides that Creditor was disbursed $115,000.00 directly from escrow, $29,000.00 disbursed to Debtor (homestead exemption proceeds) directly from escrow, and a projected $73,000.00+ of net sales proceeds, to which Creditor's lien attached, to be held by the Chapter 13 Trustee pending determination of Creditor's Claim. *Id*., ¶ F.

As discussed below, the court does not make a "reasonableness" determination of fees pursuant to 11 U.S.C. § 506(b), which would have the effect of making some of the enforceable fee obligation part of a secured claim and the other part as an unsecured claim. Rather, this analysis and Decision are made pursuant to 11 U.S.C. § 502(b)(1) which provides (emphasis added):

> (b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—
>
> (1) such **claim is unenforceable against the debtor** and property of the debtor, **under any agreement or applicable law** for a reason other than because such claim is contingent or unmatured; . . . .

This court's determination is as to what are the enforceable attorney's fees rights of Creditor pursuant to the contract and applicable California law – the same as the determination would be made in an adversary proceeding in this court or an action in the District Court.

Creditor's right to attorney's fees is contractual, with the following provision set forth in the Promissory Note ("Note") upon which Creditor bases his Claim in this case:

> 9. Attorney Fees. Borrower agrees to pay the following costs, expenses, and attorney fees paid or incurred by Lender, or adjudged by -a court: (a) reasonable costs of collection and costs, expenses, and attorney fees paid or incurred in connection with the collection or enforcement of this Note, whether or not suit is filed; (b) reasonable costs, expenses, and attorney fees paid or incurred in connection with representing Lender in any bankruptcy, reorganization, receivership, or other proceedings affecting creditors' rights and involving a claim under this Note; (c) reasonable costs, expenses, and attorney fees incurred to protect the lien of the Security Instrument; and (d) costs of suit and such sum as the court may adjudge as attorney fees in any action to enforce payment of this Note or any part of it.

Note, ¶ 9; Attachment to Original Proof of Claim 2-1, p. 8. This contractual provision provides that Debtor or Creditor (see Cal. Civ. § 1717 below) is obligated to the other only for reasonable costs and attorney's fees (not merely whatever amount is demanded) relating to enforcement of the Note, deed of trust (the security instrument), and in litigation relating thereto.

California law makes a contractual right to attorney's fees reciprocal even if the provisions are written to state they are to the benefit of only one party to the contract:

California Civil Code § 1717. Contract provision for attorney fees and costs

(a) In any **action on a contract**, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, **whether he or she is the party specified in the contract or not,** shall be entitled to reasonable attorney's fees in addition to other costs.

Where a contract provides for attorney's fees, as set forth above, that provision shall be construed as applying to the entire contract, unless each party was represented by counsel in the negotiation and execution of the contract, and the fact of that representation is specified in the contract.

Reasonable attorney's fees shall be fixed by the court, and shall be an element of the costs of suit.

Attorney's fees provided for by this section shall not be subject to waiver by the parties to any contract which is entered into after the effective date of this section. Any provision in any such contract which provides for a waiver of attorney's fees is void.

(b)
(1) **The court, upon notice and motion by a party, shall determine who is the party prevailing on the contract** for purposes of this section, whether or not the suit proceeds to final judgment. Except as provided in paragraph (2), the party prevailing on the contract shall be the party who recovered a greater relief in the action on the contract. The court may also determine that there is no party prevailing on the contract for purposes of this section.

California Civil Code § 1717 (emphasis added).

Here, the fees at issue relate to these bankruptcy proceedings, filing claims, filing amended claims, filing notices of postpetition fees and expenses, and litigating objections to such claims and notices. Additionally, some of the Objection goes to pre-bankruptcy proceeding amounts, asserting that they are not within the contractual provision.

The general method to determine the allowable amount of attorney's fees to a prevailing party is stated by the Ninth Circuit Court of Appeals as follows:

The "customary method" for awarding fees is the lodestar method, which is performed by multiplying the number of hours reasonably expended by the prevailing party in the litigation by a "reasonable hourly rate." *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996). There is a "strong presumption" that the lodestar figure represents a reasonable award, and the figure should only be departed from "if certain factors relating to the nature and difficulty of the case overcome this strong presumption and indicate that such an adjustment is necessary." *Long*, 932

14

F.2d at 1314 (internal quotation marks omitted).

The district court must "provide a . . . detailed account of how it arrives at appropriate figures for 'the number of hours reasonably expended' and 'a reasonable hourly rate.'" *Hall v. Bolger*, 768 F.2d 1148, 1151 (9th Cir. 1985) (quoting *Blum v. Stenson*, 465 U.S. 886, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984)). Though the district court generally possesses a "superior understanding of the litigation," "[i]t remains important . . . for the district court to provide a concise but clear explanation of its reasons for the fee award." *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983). To determine a "reasonable hourly rate," the district court should consider: "experience, reputation, and ability of the attorney; the outcome of the results of the proceedings; the customary fees; and the novelty or the difficulty of the question presented." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1211 (9th Cir. 1986) (citing *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)). The reasonable rate should generally be guided by "the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Id.* at 1210-11 (citing *Blum*, 465 U.S. at 895 n.11 (1984)).

*Hiken v. DOD*, 836 F.3d 1037, 1044 (9th Cir. 2016).

**Billing Records Presented
In Support of Creditor's Claim**

In Opposition to the Objection and in support of Creditor's Claim, copies of billing statements identifying the legal services which Creditor asserts are properly allowable as part of Creditor's Claim. Exhibit 11, Creditor Support Document (with duplicates included in Exhibit 2, Dckt. 197 and Exhibit 2, Dckt. 203); Dckt. 194. The billing statements are 39 pages in length, starting at page 69 of the Exhibit document, and list the services provided by Marisol Nagata from April 10, 2020, through January 18, 2021, and for the Prenovost Law Firm for January 2021. The Exhibit includes the receipts for each invoice paid. Attached hereto as Addendum A is a summary of this Exhibit and the legal fees (not including other costs and expenses) which were billed and Creditor seeks to have included as part of its claim in this case.

**Asserted Improper Block Billing**

For the assertion that Creditor's counsel has engaged in improper "Block Billing," the court turns to the billing statements provided by Creditor's Counsel as Exhibit 11, Dckt. 194 (with duplicates included in Exhibit 2, Dckt. 197 and Exhibit 2, Dckt. 203) Support Document to their original Response to Debtor's Objection. Examples of the asserted Block Billing are set forth in Addendum B to this Decision.

Counsel Nagata's entries are detailed enough to provide a sense of the work/services

1  performed by counsel.  Although there are entries that may be considered by Debtor to be a "block

2  of related billings," these particular entries tend to show that the work performed in that one entry

3  is all related usually to one pleading and the documents in support of that pleading.  For example

4  entry dated June 3, 2020, titled Draft Documents and billed at 2.20 hours states:

5      Complete draft Objection to Debtor's Motion to Confirm First Amended Plan;
       Declaration and Exhibit Documents in Support Thereof and Certificate of Service.
6      Email communication to Client re: same along with copies of Supplemental
       Declarations in Support of Debtor's Motion and status update re: Trustee disbursal
7      on POC.

8  Dckt. 197 at 78.  The court being familiar with the bankruptcy work performed, this entry as drafted

9  is reasonable.

10     Many of the complained of "Block Billing" entries are for very small periods of time, 0.20

11  or 0.30 hours, and relate to the legal service provided and then communicating that information to

12  the client.  An example of such is:

| 7/17/20 | Review of documents<br>Receipt and review of Order Denying Motion to Confirm First<br>Amended Plan Email communication to Client re: same. | 0.30 | $112.50 |
|---------|----|----|----|

16     Though there are some issues to be addressed with respect to the legal fees sought, neither

17  Ms. Nagata nor Mr. Normandin, and their respective firms, have committed the billing sin of Block

18  Billing.  The court overrules Debtor's Objection based on "Block Billing."

19  **Asserted Improper Clerical and**
20  **Administrative Billing as Legal Services or Costs**

21     The court begins with the contractual provision for the prevailing party (as provided in Cal.

22  Civ. § 1717) attorney's fees and costs.  As stated in Paragraph 9 of the Note quoted above, the

23  contractual provision provides for payment of Attorney's Fees, Costs, and Expenses: (1) in the

24  collection or enforcement of the Note; (2) in connection with any bankruptcy, reorganization,

25  receivership, or other proceeding; (3) in connection with protection of the lien; and (4) costs of suit

26  and such amount that the court may adjudge as attorney's fees in an action to enforce payment.

27     The California Supreme Court addressed what is meant by the term "reasonable attorney's

28  fees" which will be owed in *Trope v. Katz*, 11 Cal. 4th 274, 279-280  (1995), stating (emphasis

added):

> Our resolution of this issue turns on how we construe section 1717, and particularly on how we **define the words "reasonable attorney's fees"** in subdivision (a) of that statute. We begin as always "with the fundamental premise that the objective of statutory interpretation is to ascertain and effectuate legislative intent." ( *Burden v. Snowden* (1992) 2 Cal. 4th 556, 562.) To discover that intent we first look to the words of the statute, giving them their usual and ordinary meaning. ( *Granberry v. Islay Investments* (1995) 9 Cal. 4th 738, 744; *DaFonte v. Up-Right, Inc.* (1992) 2 Cal. 4th 593, 601.) "Where the words of the statute are clear, we may not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history." ( *Burden v. Snowden, supra,* 2 Cal. 4th 556, 562.) . . .
> Second, Black's Law Dictionary defines the word "fee" generally as "A **recompense for an official or professional service** or a charge or emolument or compensation for a particular act or service. A fixed charge or perquisite charged as recompense for labor; reward, compensation, or wage given to a person for performance of services or something done or to be done." (Black's Law Dict. (6th ed. 1990) p. 614.) It goes on to **define the phrase "attorney fees" as a "Charge to client for services performed** (e.g. hourly fee, flat fee, contingency fee)." (*Ibid.*) Similarly, Webster's defines the word "fee" as "compensation often in the form of a fixed **charge for professional service or for special and requested exercise of talent or of skill**." (Webster's New Internat. Dict., *supra*, p. 833; *see also* 5 Oxford English Dict. (2d ed. 1989) p. 797 ["fee" denotes "a payment," such as the "**remuneration paid or due to a lawyer, a physician**, or (in recent use) **any professional** man, a director of a public company, etc. for an occasional service"].) Accordingly, the usual and ordinary meaning of the words "attorney's fees," both in legal and in general usage, is the consideration that a **litigant actually pays or becomes liable to pay in exchange for legal representation** . . .

Looking at the current version of Black's Law Dictionary (11th ed. 2019), the term "attorney's fee" continues to be defined as professional services as follows:

> **attorney's fee** (18c) The **charge to a client for services performed for the client**, such as an hourly fee, a flat fee, or a contingent fee. — Also spelled attorneys' fees. — Also termed attorney fees. Cf. RETAINER (4).

> **- reasonable attorney's fee**. (1853) An attorney's compensation determined to be equitable or fair based on several factors, **including the amount of time invested by the attorney**; the **level of attorney skill, experience, reputation, or ability required**; the nature and length of the professional relationship with the client; the difficulty or novelty of questions involved; the dollar amount involved and the results obtained; whether the fee is fixed or contingent and the uncertainty of collection of the fee; and the prevailing market rate for similar services rendered. See Model Rule of Prof. Conduct 1.5 (2005).

As addressed by the court below, in addition to the $350.00 and $375.00 an hour billed for legal services provided by the experienced licensed attorneys (Declaration of Tom Normandin, Esq., ¶ 3; Dckt. 232), Creditor has also billed for the normal clerical work of an office, which clerical work is part of the cost of doing business for the highly compensated/fee billing professional

licensed attorney.  These clerical and business expenses are not third-party, out of pocket costs for the attorney (such as an appraisal report, process server, filing fee, or mail expense).

Disallowed Clerical and Administrative Charges

Debtor has identified the legal fees and expenses sought by Creditor to include a number of clerical or administrative services that a lawyer and law firm provide so that the lawyer can charge the multiple hundreds of dollars an hour billing rate.  Having a secretary, administrative assistant, or other clerical staff to open the mail, transmit documents to the court, client, or opposing party, or to call and make phone appearance appointments are not separate legal service billings.  They are not legal service expenses incurred by the professional attorney in providing the highly compensated professional services.

Upon review of the billing records provided by Ms. Nagata and her firm, Geraci Legal Corporation, the court does not allow fees billed by Ms. Nagata and various non-attorneys in the total amount $3,002.50  as Clerical, Administrative, and Observational tasks by employees of the Geraci Legal Corporation.  Attached hereto as Addendum C-1 are the clerical and administrative billings which are not allowed as part of the attorney's fees, expenses, or costs as part of Creditor's Claim

All of these "services," which are specifically identified in Addendum C-1, are "merely" clerical or administrative (though necessary and important) as part of a lawyer having his or her office from which legal services may then be provided.  But the clerical and administrative work are not providing "legal services" to Creditor.  They support the lawyer who is then able to bill hundreds of dollars an hour for providing the legal services.

A review of the State Bar of California website to identify if any of the persons who are billing for services are licensed to practice law discloses the following: [2]

♦    Adeline Tungate was admitted to practice law in the State of California on January 26, 2021.

♦    Marie Espadilla is not admitted to practice law in the State of California.

///

---

[2]  http://members.calbar.ca.gov/fal/LicenseeSearch/

1          ♦       Stephanie DeLucas is not admitted to practice law in the State of California.

2          ♦       Michael Mosquera is not admitted to practice law in the State of California.

3 For the clerical and administrative work, these persons are billing $150.00 an hour for activities such

4 as: (1) Obtain Copies of Documents, (2) Review File and Process Correspondence, (3) File

5 Documents, (4) E-File Documents, (5) Call Trustee to Obtain Copies of Documents, (6) Upload

6 Documents to Mail Service, (7) Call CourtCall to Schedule Appearance, (8) File Documents to

7 Client's File, and (9) Review, Process, and Arrange Invoices in Chronological Order.

8        Detailed descriptions taken from the billing statements for each clerical or administrative act

9 billed at $150.00 an hour that is not allowed as part of Creditor's Claim are provided on

10 Addendum C-1. These administrative and clerical services for which these non-lawyers have billed

11 Creditor $150 an hour, are not "costs, expenses and attorney's fees" passed on to Debtor under the

12 attorney's fees provision in the Note.

13        At the hearing, Counsel for Creditor offered the argument that in the year 2021 "everybody"

14 bills clients for law firm staff administrative and clerical work. No evidence of "everybody doing

15 it" was presented. This, "everybody is doing it" argument, runs counter to the fee applications and

16 prevailing party attorney's fee requests this judge has reviewed since coming on the bench in

17 January 2010. Additionally, it runs counter to the undersigned judge's 26 years of pre-judicial

18 experience in representing institutional and individual creditors, bankruptcy trustees, and debtors

19 in possession. With the exception of a period in the late 1980's and early 1990's in which some law

20 firms attempted to increase their profit margins by billing their institutional clients for every petty

21 cost and expense in the office, which led to a dramatic crash in the legal community in the 1990's;

22 such clerical and administrative costs are included as part of the attorney's hourly rate (such clerical

23 and administrative services at the law firm being necessary for the attorney to provide legal services

24 justifying the attorney's hourly rate).

25        With respect to Adeline Tungate, who has one billing entry for "services" provided two

26 months before licensed to practice law, Creditor has not shown how this is part of billable legal

27 services that Debtor can be made to pay. Ms. Tungate appears to have just been asked to "sit on in

28 and listen to what an attorney does," and not provide legal services. Though counsel chose to charge

Creditor for what appears to be an "educational experience" for a law clerk/future lawyer, such does not automatically translate into fees that Debtor is obligated to pay Creditor pursuant to the contractual attorney's fee provision. Creditor offered no evidence to show that any legal services were provided by Ms. Tungate.

The court does not allow the $2,815.00 billed for clerical, administrative, or observatory work done by staff of Ms. Nagata's law firm as part of Creditor's Claim in this case.

Additionally, the billings include one entry for March 17, 2020, in which $187.50 is charged by Ms. Nagata for Ms. Nagata to provide the written attorney-client contract. This is an administrative act taken by Ms. Nagata to comply with her obligations as an attorney and establish a relationship with Creditor to undertake future legal representation. Such is not merely a better practice, but an obligation imposed on an attorney by California law.

California Business and Professions Code § 6148 requires that an attorney licensed to practice law in the State of California have a written contract with his or her client when it is reasonably foreseeable that the legal fees will exceed $1,000.00:

§ 6148. Fee for service contracts; Bills for services rendered

(a) In any case not coming within Section 6147 in which it is reasonably foreseeable that total expense to a client, including attorney fees, will exceed one thousand dollars ($1,000), **the contract for services in the case** shall **be in writing**. At the time the contract is entered into, the attorney shall provide a duplicate copy of the contract signed by both the attorney and the client, or the client's guardian or representative, to the client or to the client's guardian or representative. The written contract shall contain all of the following:

(1) Any basis of compensation including, but not limited to, hourly rates, statutory fees or flat fees, and other standard rates, fees, and charges applicable to the case.

(2) The general nature of the legal services to be provided to the client.

(3) The respective responsibilities of the attorney and the client as to the performance of the contract.

. . .

(c) **Failure to comply with any provision of this section renders the agreement voidable at the option of the client,** and the attorney shall, upon the agreement being voided, be entitled to collect a reasonable fee.

Thus, drafting the engagement agreement with Creditor was not a legal service provided to Creditor, but the attorney fulfilling her statutory obligation, as well as the right business action to

protect her law firm so that it could be paid for legal services actually provided pursuant to the terms of the agreement. Debtor does not pay Ms. Nagata for "legal services" she provided for herself and her firm in complying with California law to have the statutorily mandated written contract with her client, Creditor.

The <u>court does not allow the $187.50 in fees</u> by Ms. Nagata for providing Creditor, her client, with a contract for her law firm to provide legal services to Creditor.

**Unnecessary, Duplicative, Excessive,
or Nonproductive Fees Not Allowed
as Part of Creditor's Claim**

Debtor has presented the court with billings that are asserted to be non-productive for Creditor or duplicative of other billings. Attached hereto as Addendum C-2 is a table identifying the specific billings services, in addition to the reduction in fees above for the December 22, 2020 hearing, which total $10,183.50, that the court does not allowed as part of Creditor's Claim.

<u>Fees Relating to Proofs of Claim and
Notices of Postpetition Mortgage Fees, Costs, and Expenses</u>

The court begins with the deficient Proofs of Claim and Notices of Postpetition Mortgage Fees, Costs, and Expenses. The first portion of fees not allowed are for preparing and filing the grossly deficient Proofs of Claim and Notices of Postpetition Mortgage Fees, Costs, and Expenses that necessitated the Objection to Claim being filed. Debtor's Objection to the Original Proof of Claim 2-1 and the Notice of Postpetition Mortgage Fees, expenses, and Charges was sustained. These fees total $1,200.00.

This information is located in Creditor's Exhibit 2, filed on January 19, 2021, Dckt. 203; and Debtor's Exhibit F, Dckt. 223. There are no billings for the Amended Proof of Claim filed on January 26, 2021.

As addressed at the hearing on Phase 1, Original Proof of Claim 2-1 was deficient in many ways, including: (1) failing to provide itemizations, and (2) failing to provide the loan payment history, failing to state the cure amount (and instead stating that the full obligation that was not yet due was the cure amount).

The court <u>does not allow $1,200.00 in the fees</u> sought that relate to the deficient Proofs of

Claim and Notices Postpetition Mortgage Fees, Costs, and Expenses filed in this case.

Reduction Of Fees Allowed
for December 22, 2020 Hearing

Additionally, Debtor addressed with the court the objection asserted with the alleged overbilling by Ms. Nagata for the December 22, 2020 hearing on the Debtor's Motion to Sell Property from which Creditor has been partially paid and will be fully paid upon the court's order hereon.

Debtor asserted that Creditor should not be allowed any fees and Ms. Nagata and Creditor should just have stipulated to the sale and not spent any time monitoring what Debtor was obtaining pursuant to a motion to sell property free and clear of Creditor's lien. Such contention is not reasonable. Creditor had to reasonably, and as necessary, incur some legal expenses to make sure that the court's order authorizing such sale complied with the Bankruptcy Code.

But Debtor is correct that Creditor seeking to recover $600.00 for 1.60 hours of attorney time at $375.00 an hour to telephonically attend the December 22, 2021 hearing is not reasonable nor supported by the evidence presented by Creditor and counter evidence presented by Debtor. Ms. Nagata's billing entry and explanation of the time spent consists of:

| 12/22/2020 | Marisol Nagata | Attend Hearing on Debtor's Motion to Approve Sale of Property. | 1.60 | $375.00 | $600.00 |

December 22, 2020 Invoice, Exhibit 2; Dckt. 203 at 74.

As Debtor's counsel pointed out, the actual hearing was digitally recorded, the matter having been specially set to accommodate the needs of the Parties to get the sale approved and "cash in the door." No court reporter was brought in for the one specially set matter.

The digital recording is Docket Item 178 and has a 23.11 minute run time. Dckt. 178. Ms. Nagata has billed 1.6 hours for a 0.4 hour (rounding up) hearing. There is no prep time or other services relating to the hearing identified. Presumably if there was preparation, calls to the client prior to the hearing, or other billable services, they would have been provided as part of the itemized billing statements. None have been provided.

Possibly Ms. Nagata, being a human being, merely made a clerical error and mistyped a "1"

before the .6 hours. Assuming that Ms. Nagata called in 5 minutes before the hearing and had five minutes of disconnect time from the call, that would be a total of 43 minutes, which would be 0.7 hours. The court will presume there also being some time in which Ms. Nagata reviewed her notes after the hearing and allows 0.8 hours, $300.00 as recoverable attorney's fees, but the court does not allow the additional $300.00 in fees for the 23 minute hearing conducted on December 22, 2020, as contractual attorney's fees.

The court does not allow $300.00 of the $600.00 in fees sought by Creditor for the 0.4 of an hour hearing on the Motion to Sell.

**Opposition to Objection to Claim**

Next, the court addresses the fees incurred and demanded by Creditor relating to responding to the Objection to Claim for the February 2, 2021 hearing. The court sustained the Objection in the Phase 1 proceedings of this Contested Matter. The court did not concur with Creditor's asserted opposition, ruling against Creditor. Rather than "throw the baby out with the bath water" and require a new proof of claim to be filed and then a new objection be filed, the court followed the parties' election to proceed with a supplemental objection and use the evidence presented for a Phase 2 of this Contested Matter.

The court does not allow $8,683.50 in attorney's fees which Creditor asserted were part of Creditor's Claim as of the February 2, 2021 hearing which relate to the Phase 1 hearing in which Debtor's Objection to Creditor's Original Proof of Claim 2-1 was sustained and the relief sought by Debtor, and opposed by Creditor, was substantially granted. Addendum C-2 identifies the specific fees which are not allowed as part of Creditor's Claim.

**Determination of Amount of Attorney's Fees**
**Included as Part of Creditor's Claim and**
**Reduction of Claimed Interest For Fees Not Allowed**

Two adjustments need to be made to Creditor's Claim as asserted by Creditor. First, to reduce from the amount requested those fees determined not to be included as part of the contractual fees for which Debtor is liable as stated above. Second, to reduce the amount of interest which Creditor has compounded monthly at 18% per annum included in Creditor's Claim which relate to the requested attorney's fees that have not been allowed.

**Amount of Attorney's Fees**

First, the court computes the requested attorney's fees that are allowed and makes the adjustment for the fees for which the Debtor is determined not to be contractually liable from those stated on the attorney's fees billing records presented by Creditor as evidence in support of the Opposition to the Objection. These billing records are provided by Creditor as Exhibit 2, Dckt. 203.

| Marisol Nagata<br>Geraci Legal Corporation<br>Monthly Statement Date | Amount of Legal Fees and Expenses Billed |
|---|---|
| April 25, 2020 Statement<br>Exhibit 2 at 41, Dckt. 203 | $1,912.50 |
| May 24, 2020 Statement<br>*Id*. at 44 | $5,362.50 |
| June 25, 2020 Statement<br>*Id*. at 48 | $75.00 |
| June 25, 2020 Second Statement<br>*Id*. at 50 | $2,325.00 |
| July 25, 2020 Statement<br>*Id*. at 52 | $1,522.50 |
| August  25, 2020 Statement<br>*Id*. at 56 | $3,322.50 |
| September 15, 2020 Statement<br>*Id*. at 60 | $1,725.00 |
| October 1, 2020 Statement<br>*Id*. at 63 | $1,245.00 |
| November 12, 2020 Statement<br>*Id*. at 66 | $4,609.10 |
| December 1, 2020 Statement<br>*Id*. at 71 | $1,418.03 |
| December 22, 2020 Statement<br>*Id*. at 74 | $1,927.50 |
| January 14, 2021 Statement | $2,637.08 |
|  |  |
| **Tom Normandin<br>Prenovost, Normandin, Dawe & Rocha<br>Monthly Statement Date** |  |
| 1/18/2021 | $6,650.00 |
|  | ================= |

24

| Total Legal Fees Sought As Part of Creditor's Claim | **$34,731.71** |
| --- | --- |
| Not Allowed Clerical, Administrative, or Observational Fees | ($3,002.50) |
| Not Allowed Fees Re Objection to Original Proof of Claim 2-1 and Notices of Postpetition Mortgage | ($1,200.00) |
| Not Allowed Fees for 23 Minute December 21, 2021 Hearing | ($300.00) |
| Not Allowed Fees Re Objection to First Amended Proof of Claim 2-2, Second Amended Proof of Claim 2-3 | ($8,683.50) |
|  | ================ |
| Total Allowed Attorney's Fees and Expenses as Part of Creditor's Claim | **$21,545.71** |

The court allows Creditor $21,454.71 as the contractual attorney's fees pursuant to the attorney's fees provision in the Note and applicable California law, California Code of Civil Procedure § 1717. <u>The court does not allow $13,186.00</u> (37.9%) of the attorney's fees Creditor has included in Creditor's Claim, determining that such amounts are not owed by Debtor under the contractual attorney's fees provision and applicable California law, or to the extent they relate to the Objection proceedings, such have not yet been awarded by post-judgment (order) motion as provided in Federal Rule of Civil Procedure 54 and Federal Rule of Bankruptcy Procedure 7054, 9014(c).

**Adjustment of 18% Per Annum (Compounded Monthly) Interest**
**Relating to Legal Fees Not Included in Creditor's Claim**
**and**
**The Monthly Payments Made on Claim by the Chapter 13 Trustee**
**and $115,000.00 Payment From Sale of Property**

As part of Creditor's Claim, Creditor computes the 18% interest to total $29,180.14 as of the April 20, 2021 original Phase 2 hearing date. Creditor's Response, p. 11:12-18; Dckt. 190. This interest is computed on an asserted $41,763.91 in attorney's fees, which included anticipated attorney's fees in connection with the Objection to Claim Contested Matter and interest computed to the February 2, 2021 Phase 1 hearing date.

A substantial payment was made to Creditor in January 2021 from the sales proceeds, and no other amounts added to Creditor's Claim after the February 2, 2021 computation, the court can

1  make the adjustments from those amounts as computed by Creditor and compute the interest on the

2  unpaid balance to be paid from the remaining sales proceeds.

3      At the April 27, 2021 final Phase 2 hearing, the parties confirmed on the record that Creditor

4  was paid $115,000.00 from the sales proceeds in January 2021, to be applied to Creditor's Claim.

5  Since Creditor is charging interest on all amounts owing, whether the $115,000.00 is applied to

6  principal, fees, interest, or other amounts are not of significance.

7      The Note provides for interest of 10% per annum, computed on a 30/360 simple interest

8  basis. First Amended Proof of Claim 2-2; Attachment, Note ¶ 1. The 30/360 computation is stated

9  in the Note as:

10      1. *Interest*. . . . Interest on this Note is computed on a 30/360 simple interest basis;
        that is, with the exception of odd days before the' first full payment cycle, monthly

11      interest is calculated by applying the ratio of the interest rate over a year of 360 days,
        multiplied by the outstanding principal balance, multiplied by a month of 30 days.

12      Interest for the odd days before the first full month is calculated on the basis of the
        actual days and a 360-day year. All interest payable under this Note is computed

13      using this method.

14  *Id*. For a partial month, stated above as "before the first full month" is calculated on the actual days

15  at issue.

16      However, in the event of a default, the Note provides that the interest rate increases to 18%

17  per annum. *Id*., ¶ 6. In addition to stepping up a an 18% default interest, the Note further provides

18  for the compounding of interest. *Id*., ¶ 7 (emphasis added). The parties have not questioned or put

19  at issue before this court Creditor's computation of the compounding of interest at 18%, other than

20  with respect to amounts which Debtor asserts should not be part of Creditor's Claim allowed in this

21  case. The court makes the necessary adjustments for the 18% interest charged for such items which

22  the court does not allow as part of Creditor's Claim.

23      Attached hereto as Addendum D and incorporated herein is the court's computation of

24  compound interest spread sheet to account for the legal fees not allowed as part of Creditor's Claim,

25  but which were included by Creditor in the Attachments to Creditor's Proofs of Claim.

26      The Mortgage Proof of Claim Attachment to First Amended Proof of Claim 2-2 provides a

27  detailed breakdown of the legal fees added into Creditor's Claim and the date added, for which

28  Creditor includes the compounded 18% interest through February 2, 2021. On Addendum D, the

court computes the amount of 18% interest, compounded monthly, for the attorney's fees that the court has not allowed Creditor to total $353.06.

The $353.06 of compounded interest for the attorney's fees not allowed must be subtracted from Creditor's February 2, 2021 Creditor's Claim calculation.

**Computation of Creditor's Claim**

Looking at Creditor's Supplemental Response, Dckt. 231, Creditor computes Creditor's Claim, as of February 2, 2021, including compounded interest to that date to be $182,764.76. Creditor Response, p. 4:9; Dckt. 201; Creditor Declaration, ¶ 15; Dckt. 202; Creditor's Attorney Fee Billing Records, Exhibit F, Dckt. 223, 224; and Creditor's Supplemental Response for the April 20, 2021 hearing, p. 2:14-22, Dckt. 231. Creditor updates the projected amount of the claim to be $188,389.76, correcting for $625.00 in miscalculations and projecting an additional $5,000.00 in future attorney's fees computed to April 20, 2021 Phase 2 hearing date." Creditor Supp. Response, p. 2:14-27; Dckt. 231.

This computation presumes that Creditor recovers all of the legal fees in connection with the prior and future hearings Objection to Claim proceedings. Such fees, if any, will be determined by post-Phase 2 Order on the Objection motion(s) as provided in Federal Rule of Civil Procedure 54 and Federal Rule of Bankruptcy Procedure 7054(b) and 9014(c).

Using this information provided in Creditor's Supplemental Response, p. 2:14-22, and the Roger Anderson Declaration, ¶ 26, Dckts. 231, 191; and making the adjustments for payment of the disallowed allowed fees and the compounded interest on the not allowed fees, the court computes Creditor's Claim to the February 2, 2021 date as follows:

| Principal | $100,000.00 | |
|---|---|---|
| Accrued interest Computed to February 2, 2021 | $29,180.14 | Amount Computed on Entire Creditor's Claim, Not Taking into Account the $115,000.00 Sales Proceeds Payment and $1,337.80 in disbursements received from the Chapter 13 Trustee Not Applied to the Claim Computation. |
| | ($353.06) | Reduction for Compounded Interest For Attorney's Fees Not Allowed by the Court (Computation Attached Hereto As Addendum D.) |

| | | |
|---|---|---|
| Late Charges | $2,504.33 | |
| Advances | $2,949.18 | |
| Attorney's Fees and Costs Included As Part of Creditor's Claim | $41,763.91 | Creditor's Supplemental Response, p. 2:18; Dckt. 231. |
| | ($7,032.20) | No Billing Records (Not Documented) For This Amount of Attorney's Fees and Expenses ($34,731.71 in Attorney Billing Invoices for Fees and Expenses With $41,763.91 Stated in Second Amended Proof of Claim 2-3) |
| (Attorney's/Legal Services Billings Totaling $21,541.71 allowed as part of Creditor's Claim) | ($13,186.00) | Reduction for Documented Requested Attorney's Fees Not Allowed by the Court |
| Foreclosure Fees and Expenses | $3,755.48 | |
| Loan Servicing Fees | $525.00 | |
| NSF Fee | $25.00 | |
| Lender Forced Place Insurance | $2,492.00 | |
| | ========= | |
| | $162,623.78 | Total Creditor's Claim Computed to February 2, 2021, Without Application of $115,000.00 on January 6, 2021. |

The above amount is based on Creditor's computation of his claim to the February 2, 2021 hearing. However, Creditor was paid $115,000.00 from the sales proceeds of its collateral and $1,337.80 from the Chapter 13 Trustee on January 6, 2021, substantially reducing Creditor's Claim, and the compounded 18% interest properly computed on the reduced Claim balance thereafter.[3] The court notes that as of the April 19, 2021 filing of Second Amended Proof of Claim 2-3, asserts

---

[3] The date stated on Mortgage Attachment to First Amended Proof of Claim 2-2 and Second Amended Proof of Claim 2-3 lists a date of January 18, 2021 for the $115,000.00 from the sales proceeds and the $1,337.80 disbursement from the Chapter 13 Trustee. However, at the April 27, 2021 hearing the parties confirmed that the $115,000.00 was received by Creditor on January 6, 2021. The court also uses that date for the $1,337.80 Trustee disbursement which is shown as being on January 18, 2021. Trustee Plan disbursements are made between the 25th and end of each calendar month, thus the Plan disbursement with the January 18, 2021 date would have necessarily been received earlier, around the first of January 2021.

a Claim in the amount of $183,094.14, which amount does not provide creditor for the monies received January 18, 2021. Creditor states in the Mortgage Attachment that the $115,000.00 in sales proceeds and the $1,337.80 January 2021 payment from the Chapter 13 Trustee were in the "Unapplied funds balance."

To compute the adjustment for this, and Creditor providing an interest computation for which is stated to be for a claim balance that does not reflect the January 18, 2021 payment of $115,000.00, the court computes Creditor's Claim looking forward from January 18, 2021, as follows.

| Computation of Actual Amount of Creditor's Claim as of February 2, 2021 | |
|---|---|
| $162,623.78 | Creditor's Claim Computed in Mortgage Proof of Claim Attachment to First Amended and Second Amended Proofs of Claim, 2-2 and 3-2. |
| ($115,000.00) | Sales Proceeds Payment - January 6, 2021 |
| ($1,337.80) | 2021 Chapter 13 Trustee Payment received in the first half of January - January 6, 2021 |
| ($1,570.56) | Adjustment for 27 days (January 6, 2021 Receipt to February 2, 2021 interest at the 18%, 30/360 Note Interest Rate on the $115,000 amount paid and $1,337.80 Chapter 13 Payment which are not included in Creditor's February 2, 2021 Creditor's Claim Computation |
| = = = = = = = = = | |
| $44,715.42 | Amount of Creditor's Claim as of February 2, 2021 After Application of $115,000.00 Sales Proceeds and $1,337.80 Chapter 13 Trustee January 2021 Payment |

Computing forward to July 1, 2021, using the 30 day per full month/360 day year formula provided in the Note, Creditor's Claim Balance, not including any reasonable legal fees that may properly be awarded pursuant to the Note attorney's fee contractual provision and California Civil Code § 1717, is $48,076.29 as of July 1, 2021.

| | |
|---|---|
| Per Diem Interest<br>18% Per Annum ÷ 360 Days = .05% Per Diem | 0.05% |
| | |
| February 2, 2021 Claim Balance | $44,715.42 |
| + 26 Days .05% Per Diem Interest | $581.30 |

| | |
|---|---|
| March 1, 2021 Claim Balance | $45,296.72 |
| + 30 Days at .05% Per Diem Interest | $679.45 |
| | |
| April 1, 2021 Claim Balance | $45,976.17 |
| + 30 Days at .05% Per Diem Interest | $689.64 |
| | |
| May 1, 2021 Claim Balance | $46,665.81 |
| + 30 Days at .05% Per Diem Interest | $699.99 |
| | |
| June 1, 2021 Claim Balance | $47,365.80 |
| + 30 Days at .05% Per Diem Interest | $710.49 |
| | = = = = = = |
| July 1, 2021 Claim Balance | $48,076.29 |

The per diem interest going forward in the month of July 2021 is $24.04 ($48,076.29 x .05% = $24.04).

The court determines that Creditor's Claim in this case, after crediting the January 2021 payment of $115,000.00 and $1,337.80 from the Chapter 13 Trustee, and providing for 18% annual interest compounded monthly (30/360), Creditor's remaining claim balance is $48,076.27 as of July 1, 2021, with the per diem interest accrual on that amount in July 2021 being $24.04.

This does not take into account "prevailing party" contractual reasonable attorney's fees (Note and Cal. Civ. 1717) which may be awarded Debtor and asserted as an offset (in lieu of being enforced in the same manner as a judgment) or awarded Creditor to be included as part of Creditor's Claim.

**CREDITOR'S ASSERTION THAT NOTWITHSTANDING
THE COURT DETERMINING THAT DEBTOR IS
NOT OBLIGATED TO PAY THE ATTORNEY'S FEES,
CREDITOR IS STILL ENTITLED TO AN UNSECURED CLAIM FOR SUCH FEES**

On May 4, 2021, Roger Anderson, the Trustee Creditor, filed his Declaration providing his personal knowledge testimony under penalty of perjury. Fed. R. Evid. 601, 602. Nothing is provided to the court that Mr. Anderson is a legal expert, or that if he is, why he would make a declaration providing his legal opinion on bankruptcy law, as opposed to filing a points and authorities.

In this Declaration, Mr. Anderson first requests that the court make a ruling on an apparent legal analysis and argument that Mr. Anderson testifies to in his Declaration. Declaration, ¶ 5; Dckt. 249. Mr. Anderson's legal assertion and request for a ruling are stated as follows:

> 5. I respectfully request the Court, in ruling on the Objection, make specific rulings on (a) the application of the *In re Welzel*, 275 F.3d 1308, 1318 (11 th Cir. 2001) and *In re Coastal Realty Invs., Inc.*, 2014 WL 929612, at *6-11 (Bankr. S.D.Ga. Mar. 10, 2014) cases which hold that disallowed are to be treated as an unsecured claim under 11 U.S.C. § 502; and (b) why the amounts stricken from my claim are "unreasonable". I want to ensure the record for appeal, if any, is clear.

*Id*.

In addition to making this legal analysis under penalty of perjury, Mr. Anderson and his counsel also certify that "[t]he claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; . . . ." Fed. R. Bankr. P. 9011(b)(2).

As discussed above, the present Claim Objection is not a situation where the court is determining what legal fees for which a debtor is liable under a contract or state law could be allowed as part of an oversecured claim pursuant to 11 U.S.C. § 506(b) as "reasonable," and what portion of the legal fees owed on the contract or state law were "unreasonable," as a matter of federal law and relegated to unsecured claim status in the bankruptcy case. The court clearly was, and is, addressing the issue of what legal fees were owed by Debtor to Creditor as part of the claim, whether incurred pre or postpetition, pursuant to the terms of the contract, the Note, and state law, California Civil Code § 1717.

Beginning with the Circuit Court of Appeal authority cited to the court by Mr. Anderson, in *Welzel* the Eleventh Circuit was addressing a contention that 11 U.S.C. § 506(b) was a basis for disallowing attorney's fees as part of a secured claim if the bankruptcy court concluded they were "unreasonable" as provided in 11 U.S.C. § 506(b) standard. If determined unreasonable as a matter of federal law, then the attorney's fees owed as a matter of contract or applicable state law would then be allowed as an unsecured claim. *Welzel v. Advocate Realty Invs., LLC (In re Welzel)*, 275 F.3d 1308, 1310 -1311 11th Cir. 2001).

In *Welzel*, the note that the contractual provision and Georgia Law did not provide for the

31

payment of "reasonable fees," but set an amount of 15% of the principal amount plus accrued interest as the legal fees that were owed. *Id.*, 1311. This 15% of principal and interest computation of attorney's fees is in the nature of a liquidated damages provision in which said attorney's fees owed was a predetermined amount without regard to whether they were the actual legal fees incurred or legal services provided. In *Welzel* the "liquidated damages" attorney's fees computed at 15% of the principal plus accrued interest totaled $146,799.71. *Id.* The court noted that of the $146,799.71 liquidated damages percentage computation, the creditor in *Welzel* had actually incurred only $40,000.00 in legal fees.

The bankruptcy court in *Welzel* concluded that 11 U.S.C. § 506(b) controlled in the bankruptcy case over applicable Georgia law that made the liquidated damages attorney's fee provision enforceable, and concluded that 11 U.S.C. § 506(b) required that only the reasonable fees could be allowed as part of a secured claim, but the enforceable obligation to pay the "unreasonable" amount was bifurcated into a general unsecured claim for that creditor. *Id.*, 1312.

The Eleventh Circuit, *En Banc*, concurred in *Welzel* that 11 U.S.C. § 506(b) created a federal "reasonable attorney's fees" overlay for state law in determining what attorney's fees are allowed as part of a creditor's secured claim. Though the creditor in *Welzel* argued that since the liquidated damages attorney's fees provision was enforceable under state law, then it had to be "reasonable" and included in its secured claim, the Eleventh Circuit, *En Banc*, disagreed, stating:

> For the foregoing reasons, we conclude, as did the district court and the panel, that Congress intended for contractually set attorney's fees in the oversecured creditor context to be governed by § 506(b), even if otherwise vested and enforceable under state laws like O.C.G.A. § 13-1-11. We therefore rule that the contractually set attorney's fees owed to Advocate must be assessed for reasonableness under § 506(b).

*Id.*, 1316.

The Eleventh Circuit then determined that even if, as a matter of federal law, the attorney's fees were not "reasonable" as provided in 11 U.S.C. § 506(b), the federal law determined unreasonable portion of the attorney's fees that were enforceable under state law were included in that creditor's general unsecured claim. *Id.*, 1318-1319. The Eleventh Circuit decision in *Welzel* addressed a claim in which the legal fees were owed, but subject to secured claim amount limitations

32

1  to only the federally determined "reasonable" amount under 11 U.S.C. § 506(b).

2  The *Welzel* Decision does not stand for the proposition that if attorney's fees are demanded,

3  but determined not to be owed by the debtor under the terms of the contract and state law, the

4  creditor can use the Bankruptcy Code to circumvent the contract and applicable state law to create

5  an obligation to pay attorney's fees which are not within the contractual provisions or which violate

6  the applicable state law.

7  The court does not understand the basis for Mr. Anderson's and his counsel's certification

8  that the *Welzel* case supports Creditor being able to demand and be paid as an unsecured claim

9  unreasonable attorney's fees for which Debtor is not obligated to pay under the "reasonable"

10  contractual provisions of the Note and California law.

11  Mr. Anderson's second authority for his legal opinion is *In re Coastal Reality Investors*, an

12  unreported decision out of the Southern District of Georgia. The bankruptcy court in *Coastal*

13  *Reality* is merely following the Eleventh Circuit decision in *Welzel* and bifurcating an enforceable

14  liquidated damages attorney's fee obligation under Georgia law into the 11 U.S.C. § 506(b) secured

15  claim portion and the unreasonable, but enforceable unsecured claim portion. The obligation to pay

16  the fees was again a 15% of the outstanding principal plus interest contractual provision. This

17  "liquidated damages" attorney's fees provision was enforceable under Georgia law, with the court

18  determining that the debtor owed the entire 15%.[4]

19  ───────────────────

20  [4] Though no such "liquidated damages" attorney's fee provision is at issue in this case,
    the court notes that such a provision may well be unenforceable under California law.

21

22  A liquidated damages clause will generally be considered unreasonable, and
    hence unenforceable under section 1671(b), if it bears no reasonable relationship

23  to the range of actual damages that the parties could have anticipated would flow
    from a breach. The amount set as liquidated damages "must represent the result of

24  a reasonable endeavor by the parties to estimate a fair average compensation for
    any loss that may be sustained." (*Garrett v. Coast & Southern Fed. Sav. & Loan*

25  *Assn., supra*, 9 Cal. 3d at p. 739 (hereafter *Garrett*).) In the absence of such
    relationship, a contractual clause purporting to predetermine damages "must be

26  construed as a penalty." (*Ibid.*) " A penalty provision operates to compel
    performance of an act [citation] and usually becomes effective only in the event

27  of default [citation] upon which a forfeiture is compelled without regard to the
    damages sustained by the party aggrieved by the breach [citation]. The

28

The United States Supreme Court addressed this issue of a creditor's ability to recover attorney's fees as part of its claim, whether a secured or unsecured claim, in 2007, stating:

> Indeed, we have long recognized that the "'basic federal rule' in bankruptcy is that **state law governs the substance of claims**, Congress having 'generally left the determination of property rights in the assets of a bankrupt's estate  to state law.'" *Ibid.* (quoting *Butner v. United States*, 440 U.S. 48, 57, 54, 99 S. Ct. 914, 59 L. Ed. 2d 136 (1979); citation omitted). Accordingly, when the Bankruptcy Code uses the word **"claim"**--which the **Code itself defines as a "right to payment**," 11 U.S.C. § 101(5)(A) --it is usually referring to **a right to payment recognized under state law**. As we stated in *Butner*, "[p]roperty interests are created and defined by state law," and "[u]nless some federal interest requires a different  result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." 440 U.S., at 55, 99 S. Ct. 914, 59 L. Ed. 2d 136; *accord, Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156, 161, 67 S. Ct. 237, 91 L. Ed. 162 (1946) ("What claims of creditors are valid and subsisting obligations against the bankrupt at the time a petition in bankruptcy is filed is a question which, in the absence of overruling federal law, is to be determined by reference to state law").

*Travelers Cas. & Sur. Co. of Am. v. PG&E*, 549 U.S. 443, 450-451 (2007).  The Supreme Court reversed the Court of Appeal decision that bankruptcy law was a basis to deny a state law enforceable attorney's fee term merely because it involved litigation in the bankruptcy court, stating:

> The Court of Appeals for the Ninth Circuit held, based on a rule [the *Fobian* Decision] previously adopted by that court, that such fees are categorically prohibited--even where the contractual allocation of attorney's fees would be enforceable under applicable nonbankruptcy law--to the extent the litigation involves issues of federal bankruptcy law. Because that rule finds no support in the Bankruptcy Code, we vacate and remand.
>
> In rejecting Travelers' claim for contractual attorney's fees, **the Court of Appeals did not conclude that the claim was "unenforceable" under § 502(b)(1) as a matter of applicable nonbankruptcy law.** Nor did it conclude that Travelers' claim was rendered unenforceable by any provision of the Bankruptcy Code. To the contrary, the court acknowledged that, in at least some circumstances, a "'prevailing party in a bankruptcy proceeding may be entitled to an award of attorney fees in accordance with applicable state law. . . .'" 167 Fed. Appx., at 594 (quoting *Baroff*, 105 F.3d, at 441).

*Id.*, 450-451.

As clearly addressed in this Decision, this court has not considered 11 U.S.C. § 506(b) or

---

> characteristic feature of a penalty is its lack of proportional relation to the damages which may actually flow from failure to perform under a contract. [Citations.]" (*Ibid.*)

*Ridgley v. Topa Thrift & Loan Assn.*, 17 Cal. 4th 970, 977 (1998).

some other provision of bankruptcy law in determining the attorney's fees that Debtor is obligated to pay Creditor. Rather, the court has applied the provisions of the Note (the contract) and California Civil Code § 1717. The amount of fees not allowed are not because they are "merely" unreasonable as determined pursuant to federal law, 11 U.S.C. § 506(b), but because Debtor does not owe an obligation to pay those amounts under the terms of the Note (the contract) and applicable California law.

### CREDITOR'S REQUEST FOR DUE PROCESS

In his Declaration, Mr. Anderson also provides the court with his further analysis of California law, stating:

> California requires a noticed motion and argument for anyone claiming to be a Prevailing Party. My due process rights will be violated if the Debtor is determined to be the Prevailing Party without my opportunity to contest that determination and to make the case why I am the prevailing party.

Declaration, ¶ 6; Dckt. 249. In making this request, Mr. Anderson does not cite the court to where and how this California statute requires such a hearing in federal court.

The court notes that Creditor's attorney filed a "Memorandum re Prevailing Party and Request for Sanctions" on May 21, 2021, fourteen days after Mr. Anderson's Declaration. Creditor's counsel identifies the applicable California law, California Civil Code § 1717, cited by the court above.

California Civil Code § 1717(b) is the applicable law which states:

> (b)
> (1) The court, upon notice and motion by a party, shall determine who is the party prevailing on the contract for purposes of this section, whether or not the suit proceeds to final judgment. Except as provided in paragraph (2), the party prevailing on the contract shall be the party who recovered a greater relief in the action on the contract. The court may also determine that there is no party prevailing on the contract for purposes of this section.

This provision of California law is consistent with the applicable Federal Rules of Civil Procedure and Federal Rule of Bankruptcy Procedure that apply in federal court. Federal Rule of Bankruptcy Procedure 7054(b) incorporates Federal Rule of Civil Procedure 54(d) provides for the attorney's fees for a "prevailing party" in the litigation to be determined by post-judgment motion. This court will not make such a determination of which party is the "prevailing party," if either,

except upon a post-Decision and Order thereon motion.

**DECISION**

A copy of the court's Decision and the Interim Order from the hearing on Phase 1 for these Objections (Dckts. 211, 213), which are incorporated herein, are attached hereto as Addendum E. Pursuant thereto, the Objections to both Proof of Claim 2-1 and the Notice of Postpetition Mortgage Fees, Expenses, and Charges (filed on December 21, 2020) based on the failure to provide the itemizations of fees, costs, and expenses as required by the Federal Rules of Bankruptcy Procedure are sustained pursuant to the Phase 1 proceedings in this Contested Matter.

For the grounds as stated above for Phase 2 of the Objection to Creditor's Claim:

A.   The court does not allow (11 U.S.C. § 502) as part of Creditor's Claim, First and Second Amended Proofs of Claim 2-2 and 2-3, amounts included by Creditor Roger Anderson, Trustee of RWA Trust dated March 14, 2014 in his Original and Amended Proofs of Claim in this case:

   1.   Attorney's Fees in excess of $21,541.71, and

   2.   Interest in the amount of $353.06.

B.   The remaining unpaid balance of Creditor's Claim is $48,076.29 as of July 1, 2021, plus Per Diem Interest of $24.04 during the month of July 2021, after giving credit for the $115,000.00 payment from the sales proceeds of Creditor's collateral and the $1,337.80 payment by the Chapter 13 Trustee, and not including any adjustments for fees awarded either party relating to the Objection to Claim Contested Matter.

C.   No unsecured claim is allowed for Creditor for the amounts of attorney's fees which have been determined not to be an enforceable obligation under the terms of the Note and applicable California law, and not allowed as part of Creditor's claim in this case (11 U.S.C. § 502).

Any Party to this Contested Matter asserting the right to be awarded costs or attorney's fees, or both, in connection with this Contested Matter shall request such as provided in Federal Rule of Civil Procedure 54, as incorporated into the Federal Rules of Bankruptcy Procedure, and Federal Rules of Bankruptcy Procedure 7054 and 9014(c).

The court shall enter a separate order pursuit to this Decision.

**Dated:** July 16, 2021                    **By the Court**

Ronald H. Sargis, Judge
United States Bankruptcy Court

**ADDENDUM A**

**Billing Records Filed In Support of Attorney's Fees to Be Included in Creditor's Claim**

| Law Firm | Billing Statement Invoice Month | Amount Billed for Legal Services (Excluding Expenses) | Record |
|---|---|---|---|
| Geraci | December 2019 | $1,461.00 | Exhibit 3, Dckt. 194 |
| Geraci | February 2020 | $397.00 | Exhibit 3, Dckt. 194 |
| Geraci | April 2020 | $1,912.50 | Exhibit 3, Dckt. 194 Duplicate Filed as Exhibit 2, Dckt. 203 |
| Geraci | May 2020 | $5,362.50 | Exhibit 3, Dckt. 194 Duplicate Filed as Exhibit 2, Dckt. 203 |
| Geraci | June 2020 | $75.00 | Exhibit 3, Dckt. 194 Duplicate Filed as Exhibit 2, Dckt. 203 |
| Geraci | June 2020 (Second Billing Statement) | $2,325.00 | Exhibit 3, Dckt. 194 Duplicate Filed as Exhibit 2, Dckt. 203 |
| Geraci | July 2020 | $1,500.00 | Exhibit 3, Dckt. 194 Duplicate Filed as Exhibit 2, Dckt. 203 |
| Geraci | August 2020 | $3,322.50 | Exhibit 3, Dckt. 194 Duplicate Filed as Exhibit 2, Dckt. 203 |
| Geraci | September 2020 | $1,725.00 | Exhibit 3, Dckt. 194 Duplicate Filed as Exhibit 2, Dckt. 203 |
| Geraci | October 2020 | $1,245.00 | Exhibit 3, Dckt. 194 Duplicate Filed as Exhibit 2, Dckt. 203 |
| Geraci | November 2020 | $4,410.00 | Exhibit 3, Dckt. 194 Duplicate Filed as Exhibit 2, Dckt. 203 |
| Geraci | December 2020 | $1,387.50 | Exhibit 3, Dckt. 194 Duplicate Filed as Exhibit 2, Dckt. 203 |
| Geraci | December 2020 (Second Billing Statement) | $1,927.50 | Exhibit 3, Dckt. 194 Duplicate Filed as Exhibit 11, Dckt. 197 2nd Duplicate Filed as Exhibit 2, Dckt. 203 |
| Geraci | January 2021 | $2,595.00 | Exhibit 3, Dckt. 194 Duplicate Filed as Exhibit 11, Dckt. 197 2nd Duplicate Filed as Exhibit 2, Dckt. 203 |
| Prenovost | January 2021 | $6,650.00 | Exhibit 3, Dckt. 194 Duplicate Filed as Exhibit 11, Dckt. 197 |
| | | ============== | |
| **Total of Fee Information  Provided on Billing Statements** | | **$36,295.50** | |

**ADDENDUM B**
**BLOCK BILLING ITEMS ASSERTED BY DEBTOR**

| Date | Biller | Marisol Nagata | Rate | Hours | Amount |
|------|--------|----------------|------|-------|--------|
|      |        | **Description of Services** | **$375.00** |  |  |
| 4/10/20 |  | Draft Documents<br>Review Ch 1 3 Doc[] et for Case No. 20- 21910 (Debtor's filings remain incomplete) Prepare and Efile Request to be Added to Courtesy Electronic Notification (NEF). Draft and send email communication to Client re: Ban[]ruptcy Status. | | 0.60 | $225.00 |
| 5/1/20 |  | Draft Documents<br>Review Debtor' s Plan, Schedules, prior Bankruptcy Case, loan documents. Prepare draft of Notice of earing, Ob[]ection to Confirmation of Plan, Declaration in Support of the Ob[]ection, Exhibit Cover<br>Page, Certificate of Service Prepare exhibit documents. | | 4.60 | $1,725.00 |
| 5/5/20 |  | Review , revise and finali[]e of pleadings<br>Receipt Client's signed declaration Fi nali[]e Notice of []earing, Ob[]ection to Plan, Declaration and Exhibit Documents in Support Thereof for filing | | 0.30 | $112.50 |
| 5/14/20 |  | Time at hearing (non-trial time)<br>Attend 341a meeting of Creditors Prepare and send hearing results to Client. | | 1.00 | $375.00 |
| 6/3/20 |  | Draft Documents<br>Complete draft of Objection to Debtor's Motion to Confirm First Amended Plan; Declaration and Exhibit Documents in Support Thereof and Certificate of Service. Email communication to Client re: same along with copies of Supplemental Declarations in Support of Debtor's Motion and status update re: Trustee disbursal on POC | | 2.20 | $825.00 |
| 6/3/20 |  | Review, revise and finalize of pleadings<br>Receipt signed Declaration In Support of Objection to Motion to Confirm Debtor's First Amended Plan from Client; Finalize Objection package for efiling and mailing. Email exchanges with Client re: post petition fees/costs. | | 0.02 | $75.00 |
| 7/17/20 |  | Review of documents<br>Receipt and review of Order Denying Motion to Confirm First Amended Plan Email communication to Client re: same. | | 0.30 | $112.50 |

| | | | |
|---|---|---|---|
| 8/11/20 | Review of documents<br>Review case file and status of B Case, pending hearing and action dates. Review 2nd amended plan , notice of hearing, motion to confirm same Debtor's declaration in support thereof Deb tor's amended Bankruptcy schedules. E mail communication to client re: plan review. Email communication t o Debtor's counsel re: incorrect document (support declaration). | 0.80 | $300.00 |
| 8/18/20 | Draft Documents<br>Nagata Review docket, 2nd amended plan, motion to confirm same, and Debtor's B schedules. Review emails from client and ha[]ard insurance policy. Draft ob[]ection to debtor's motion to confirm 2nd amended plan, declaration in support thereof, exhibit cover sheet, certificate of service. Prepare exhibit documents. Email communication to client re: same. | 1.50 | $562.50 |
| 8/30/30 | All research pertaining to client cases<br>Nagata Review court docket, Debtor's Motion to Confirm 3rd Amended Plan and supporting documents Research and analysis of dismissal of Chapter 13 case pursuant to 11 U.S.C. Section 1307 and Section 109(e). Draft Ob[] ection to Debtor's Motion, Declaration of Client in Support Thereof, Certificate of Service Preparation of supporting exhibits Email communication to Client re: same | 2.20 | $825.00 |
| 9/15/20 | Email communication<br>Nagata Email communications with Client 3rd party authori[]ation from debtor Email communication with Client and CalTD re: payoff demand. | 0.20 | $75.00 |
| 11/24/20 | Review Court prehearing disposition Attend continued hearing on motion for relief from stay. Email communication with Client re: hearing results. | 1.00 | $375.00 |
| 12/17/20 | Telephone call with Debtor's counsel, Mr. Fraley and his assistant, Amy, to discuss Debtor's current efforts to sell the property, file motion for order approving sale, and intention to file objection to claim; Discuss same with Client and Debtor's proposal to resolve by consent; Telephone call and email to Debtor's counsel advising re: client's response to proposal and Client's counter proposal to consent to motion to sell on condition that debtor does not object to client's claim. | 0.60 | $225.00 |

| | 1/14/20 | Advise Client and Client's loan servicer re: applying check payment from Chapter 13 Trustee payment, which represents Debtor's good faith payment as condition to continuing the hearing on Ch 13 Trustee's Motion to Dismiss case. Email Client re: completion of sale of Property; Prepare draft of Nagata declaration; Revise Anderson Declaration and Response. | 0.80 | $300.00 |
|---|---|---|---|---|

For counsel Tom Normandin, Debtor identifies one block billing item, which is

| | 1/4/20 | REVIEW AND ANALYSIS OF PROOFS OF OBJECTIONS TO PROOFS OF CLAM REVIEW AND ANALYSIS OF RECENT CASE LAW ON SUBSTANTIAL COMPLIANCE WITH PROOFS OF CLAIM; TELEPHONE CONVERSATION WIT H CLIENT REGARDING BACKGROUND | 2.30 | $805.00 |
|---|---|---|---|---|

**ADDENDUM C-1**
**CLERICAL AND ADMINISTRATIVE FEES**
**DETERMINED NOT TO BE INCLUDED IN**
**ATTORNEY'S FEES CONTRACTUAL PROVISION**

| | Not Allowed Clerical, Administrative, and Observer Fees | | Hourly Rates Billed Marisol Nagata...........$375 Michael Mosquera......$150 Stephanie DeLucas.....$150 Marie Espadilla...........$150 Adeline Tungate.........$175 | | | |
|---|---|---|---|---|---|---|
| | | | Time Billed | Not Allowed Fee Amount | | |
| | | | | | | |
| | **Geraci Legal Corporation April 25, 2020 Invoice** | | | | | |
| 4/17/20 | Marisol Nagata | Draft Documents Nagata Prepare draft letter of representation and authorization for Client. | 0.50 Hrs | $187.50 | | |
| | | | | | **Not Allowed Fees Entered on Mortgage Proof of Claim Attachment from April 25, 2020** | |
| | | | | | **$187.50** | |
| | **Geraci Legal Corporation August 25, 2020 Invoice** | | | | | |
| 7/31/20 | Michael Mosquera | Admin Obtain copies of Debtor's Second Amend Plan and related documents Update case file | 0.20 | $30.00 | | |
| 8/12/20 | Michael Mosquera | Admin Obtain copies of Debtor's Notice of Withdrawal of Support Document and related documents Update case file | 0.15 | $30.00 | | |
| 8/14/20 | Michael Mosquera | Admin Obtain copies of Debtor's Declaration in Support of Amended Plan and related documents Update case file | 0.20 | $30.00 | | |

| Date | Name | Description | Hours | Amount | | | |
|---|---|---|---|---|---|---|---|
| 8/14/20 | Michael Mosquera | Admin Reviewed the docket, updated case list in preparation for weekly status meeting and save docket in case file | 0.20 | $30.00 | | | |
| 8/17/20 | Michael Mosquera | Admin Review, process and file documents to client file | 0.20 | $30.00 | | | |
| 8/18/20 | Michael Mosquera | Admin Obtain copies of Chapter 13 Trustee's Ob[] ection to Confirmation of Debtor's Motion to Confirm Second Amended Plan and related documents Update case file | 0.30 | $45.00 | | | |
| 8/19/20 | Michael Mosquera | Admin Review, process and file incoming correspondence to client file. | 0.20 | $30.00 | | | |
| 8/19/20 | Michael Mosquera | Admin Review, process and file incoming correspondence to client file. | 0.20 | $30.00 | | | |
| 8/21/20 | Michael Mosquera | Admin Obtain copies of Debtor's Motion to Confirm Third Amended Plan and related documents Update case file | 0.40 | $60.00 | | | |
| 8/25/20 | Michael Mosquera | Admin Review, process and file incoming correspondence to client file | 0.20 | $30.00 | | | |
| 8/18/20 | Stephanie DeLucas | Legal Services Filed Ob[]ection to second amended plan, declaration, exhibits and Proof of Service with Eastern District. Created mailing label and send out for mail service. Updated file. | 0.40 | $60.00 | | | |
| | | | | | **Not Allowed Fees Entered on Mortgage Proof of Claim Attachment from August 25, 2020** | | |
| | | | | | **$405.00** | | |

| | | **Geraci Legal Corporation**<br>**September 15, 2020 Invoice** | | | | | |
|---|---|---|---|---|---|---|---|
| 9/03/20 | Michael Mosquera | Admin<br>E-filed in regards to Timothy Tobias Trocke in Eastern District, sent email to Roger, sent email to Crystal. | 0.30 | $45.00 | | | |
| 9/03/20 | Michael Mosquera | Admin<br>Review, process and file court documents to client file. | 0.20 | $30.00 | | | |
| 9/03/20 | Michael Mosquera | Admin<br>Review, process and file incoming correspondence and court documents to client file, book Court Call for<br>9/29 hearing. | 0.30 | $45.00 | | | |
| 9/14/20 | Michael Mosquera | Admin<br>Filed documents electronically regarding the Tim Trocke case. | 0.20 | $30.00 | | | |
| 9/14/20 | Michael Mosquera | Admin<br>Review, process and file court documents and incoming correspondence to client file. | 0.20 | $30.00 | | | |
| | | | | | **Not Allowed Fees Entered on Mortgage Proof of Claim Attachment from September 15, 2020** | | |
| | | | | | **$180.00** | | |
| | | **Geraci Legal Corporation**<br>**October 1, 2020 Statement** | | | | | |
| 9/15/20 | Michael Mosquera | Admin<br>Review, process and file incoming correspondence to client file | 0.20 | $30.00 | | | |
| 9/17/20 | Michael Mosquera | Admin<br>Review, process and file court documents to client file. | 0.20 | $30.00 | | | |

| | | | | | Not Allowed Fees Entered on Mortgage Proof of Claim Attachment from October 1, 2020 |
|---|---|---|---|---|---|
| | | | | | **$60.00** |
| | | Geraci Legal Corporation November 12, 2020 Invoice | | | |
| 10/8/20 | Michael Mosquera | Review, process and file court documents to client file and update case list. | 0.30 | $45.00 | |
| 10/22/20 | Michael Mosquera | Review, process and file incoming correspondence to client file | 0.20 | $30.00 | |
| 10/27/30 | Michael Mosquera | Review, process and file court documents to client file. | 0.20 | $30.00 | |
| 11/11/20 | Michael Mosquera | Review, process and file multiple court documents to client file. | 0.20 | $30.00 | |
| | | | | | |
| 10/1/20 | Stephanie DeLucas | Called Trustee David Cusick's office to obtain Trustee ledger for MFR. Was transferred and left vm, also send email with my request. Request received from Trustee's office. Uploaded to client file and emailed attorney. | 0.30 | $45.00 | |
| 10/5/20 | Stephanie DeLucas | Emailed Notice of Intent for file mfr to ch. 13 Trustee and Debtor's Attorney, sent out for mail service. Updated client file. | 0.30 | $45.00 | |
| 10/7/20 | Stephanie DeLucas | Put mfr together for Trocke, generated exhibits, created ip drive, filed mfr with Eastern, uploaded mfr and address for parties to imail to send out for service, updated client file. | 1.00 | $150.00 | |

| Date | Name | Description | Hours | Amount | | | |
|---|---|---|---|---|---|---|---|
| 10/14/20 | Stephanie DeLucas | Started prepping the post petition fee notice, uploaded invoices received from client to file, emailed attorney regarding question on invoices | 0.40 | $60.00 | | | |
| 10/19/20 | Stephanie DeLucas | Drafted ppfn for Trocke sent to attorney for review | 0.30 | $45.00 | | | |
| 10/21/20 | Stephanie DeLucas | Revised ppfn per attorney review and filed approved version with Eastern District bk court - uploaded documents to mail service to serve, updated client file. | 0.30 | $45.00 | | | |
| 10/22/20 | Stephanie DeLucas | Contacted the Trustee's office to find out status of debtor's payments. Received response. Emailed back asking if Trustee is planning on opposing mfr. Updated client file with emails. | 0.30 | $45.00 | | | |
| 10/23/20 | Stephanie DeLucas | Email received from Trustee's office re: In Re Trocke - They will not be opposing the MFR, uploaded email to client file and emailed attorney to review | 0.20 | $30.00 | | | |
| 10/29/20 | Stephanie DeLucas | Scheduled court call for MN's 11/10 mfr hearing, updated hearing calendar and client file. | 0.20 | $30.00 | | | |
| 11/2/20 | Stephanie DeLucas | Called court call to have Adeline added to MN's 11/10 hearing, emailed invoice to accounting to let them know not to charge the client for this. Updated client file with court call confirmation. | 0.30 | $45.00 | | | |
| 11/3/20 | Stephanie DeLucas | Filed Notice of Errata with pos and reply with pos with Eastern district, uploaded documents and party information to imailing for mail service, updated client file. | 0.40 | $60.00 | | | |

| | | | | | Not Allowed Fees Entered on Mortgage Proof of Claim Attachment from November 12, 2020 | |
|---|---|---|---|---|---|---|
| | | | | | $735.00 | |
| | | Geraci Legal Corporation December 1, 2020 Invoice | | | | |
| 11/13/20 | Michael Mosquera | Review, process and file court documents to client file. | 0.20 | $30.00 | | |
| 11/16/20 | Michael Mosquera | Review, process and file court documents to client file. | 0.20 | $30.00 | | |
| 11/18/20 | Michael Mosquera | Review, process and file multiple court documents to client file. | 0.50 | $75.00 | | |
| 11/20/20 | Michael Mosquera | Review, process and file court documents to client file. | 0.30 | $45.00 | | |
| 11/13/20 | Stephanie DeLucas | Reserved courtcall for Marisol's 11 /24 Motion for Relief hearing, updated hearing calendar and client file with confirmation. | 0.30 | $45.00 | | |
| 11/25/20 | Stephanie DeLucas | Scheduled courtcall for Marisol's 1/26 con't. MFR hearing, updated hearing calendar and client file. | 0.30 | $45.00 | | |
| | | | | | | |
| 11/10/20 | Adeline Tungate | Conferencing with M. Nagata re: Motion for Relief from Stay hearing. Attending court call re: same. | 1.00 | $175.00 | | |
| | | | | | | |
| 11/24/20 | Marie Espadilla | Review, process and file court documents to client file. | 0.20 | $30.00 | | |
| | | | | | | |

| | | | | | Not Allowed Fees Entered on Mortgage Proof of Claim Attachment from December 1, 2020 | |
|---|---|---|---|---|---|---|
| | | | | | **$475.00** | |
| | | **Geraci Legal Corporation December 22, 2020 Invoice** | | | | |
| 11/30/20 | Michael Mosquera | Review, process and file court documents to client file . | 0.20 | $30.00 | | |
| 12/1/20 | Michael Mosquera | Review, process and file court documents to client file. | 0.20 | $30.00 | | |
| 12/9/20 | Michael Mosquera | Review case file and status of litigation, pending hearing and action dates. | 0.20 | $30.00 | | |
| 12/17/20 | Michael Mosquera | Review, process and file incoming correspondence to client  file and Prolaw. | 0.30 | $45.00 | | |
| 12/18/20 | Michael Mosquera | Review, process and file 22 court documents to client file and Vincent Prolaw. | 0.80 | $120.00 | | |
| 12/21/20 | Michael Mosquera | Review, process and file multiple court documents to Prolaw. | 0.20 | $30.00 | | |
| 12/22/20 | Michael Mosquera | Review, process and file multiple court documents to client file and Prolaw. | 0.30 | $45.00 | | |
| | | | | | | |
| 12/11/20 | Stephanie DeLucas | Prepped ppfn, emailed to client for review, revised and emailed for final review and approval , prepped Proof of Service | 0.40 | $60.00 | | |
| 12/16/20 | Stephanie DeLucas | Revised PPFN to include the interest per attorney, emailed to  client to review and approve for filing | 0.30 | $45.00 | | |
| 12/18/20 | Stephanie DeLucas | Revised PPFN per client email. Emailed back for approval | 0.20 | $30.00 | | |

| Date | Name | Description | Hours | Amount | | | |
|------|------|-------------|-------|--------|---|---|---|
| 12/21/20 | Stephanie DeLucas | Prepped POS to attach to filed PPFN, filed PPFN with Eastern District, uploaded filed document to imail along with party information to send out for mail service, Updated client file | 0.40 | $60.00 | | | |
| | | | | | | | |
| 11/30/20 | Marie Espadilla | Review, process and file court documents to client file | 0.20 | $30.00 | | | |
| 12/1/20 | Marie Espadilla | Review, process and file court documents to client file. | 0.20 | $30.00 | | | |
| 12/21/20 | Marie Espadilla | Review, process and file court documents to client file. | 0.20 | $30.00 | | | |
| | | | | | | | |
| | | | | | **Not Allowed Fees Entered on Mortgage Proof of Claim Attachment from December 22, 2020** | | |
| | | | | | **$615.00** | | |
| | | **Geraci Legal Corporation January 15, 2021 Invoice** | | | | | |
| 12/29/20 | Michael Mosquera | Review, process and file multiple court documents to client file and Prolaw. | 0.50 | $75.00 | | | |
| 1/4/21 | Michael Mosquera | Review, process and file multiple incoming correspondence to client file and Prolaw | 0.40 | $60.00 | | | |
| 1/7/21 | Michael Mosquera | Review, process and file multiple court documents to client file and Prolaw. Research for original general engagement for proper file keeping in relation to Prolaw new process. | 0.30 | $45.00 | | | |
| 1/8/21 | Michael Mosquera | Review, process and file court documents to client file and Prolaw. | 0.20 | $30.00 | | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1/11/21 | Michael Mosquera | Review case file and status of litigation, pending hearing and Vincent action dates | 0.20 | $30.00 | | | |
| | | | | | | | |
| | | | | | | | |
| 1/4/21 | Marie Espadilla | Review, process, and file court documents to client file. | 0.20 | $30.00 | | | |
| 1/11/21 | Marie Espadilla | Review, process, and arrange invoices from January to December 2020 in chronological order (oldest to most recent) and save as one pdf file | 0.50 | $75.00 | | | |
| | | | | | **Not Allowed Fees Entered on Mortgage Proof of Claim Attachment from January 15, 2021** | | |
| | | | | | **$345.00** | | |
| | | | | | | | |
| | | | | $3,002.50 | **Total Not Allowed Clerical, Administrative, and Observational Fees** | | |

**ADDENDUM C-2**
**FEES NOT ALLOWED AS PART OF CLAIM, DECEMBER 22, 2021 HEARING, AND DRAFTING DEFICIENT PROOFS OF CLAIMS AND NOTICES**

| | Not Allowed Proof of Claim Fees | | Hourly Rate Billed<br>Marisol Nagata.......$375 | | |
|---|---|---|---|---|---|
| | | | Time Billed | Not Allowed Fee Amount | |
| | **Geraci Legal Corporation**<br>**April 25, 2020 Invoice** | | | | |
| 4/22/20 | Review of documents<br>Receive and review loan information for Client's POC. Exchange emails with FCI re: same. Receipt and review of loan documents from Client | | 0.70 hrs | $262.50 | |
| | | | | | **Not Allowed Fees Entered on Mortgage Proof of Claim Attachment from April 25, 2021** |
| | | | 0 | $0.70 | **$262.50** |
| | **Geraci Legal Corporation**<br>**June 25, 2020 Invoice** | | | $0.00 | $0.00 |
| 4/28/20 | Draft Documents<br>Draft POC Prepare supporting documents. Email copy of draft POC package with Client and FCI for review and final approval | | 2.50 hrs | $0.00 | $0.70 |
| | | | | $0.00 | **$0.00** |
| | | | | | **$0.00** |
| | | | | | |
| | | | | $263.20 | **Total Not Allowed Proof of Claim Fees** |

| | Not Allowed December 22, 2021 Hearing Fees | | Hourly Rate Billed Marisol Nagata.......$375 | |
|---|---|---|---|---|
| | | | **Time Billed** | **Not Allowed Fee Amount** | |
| | **Geraci Legal Corporation April 25, 2020 Invoice** | | | | |
| 12/22/20 | **Attend Hearing on Debtor's Motion to Approve Sale of Property** | | **1.60 hrs** | **$600.00** | |
| | | | | | **Not Allowed Based on Actual Duration of Hearing** |
| | | | | | **$300.00** |

## ADDENDUM C-2
## FEES NOT ALLOWED RELATING TO OBJECTIONS
## TO PROOFS OF CLAIMS

| | Not Allowed Objection to Claim Fees | Hourly Rate Billed Marisol Nagata..........$375 | | |
|---|---|---|---|---|
| | **Geraci Legal Corporation** **January 15, 2021 Invoice** | **Time Billed** | **Not Allowed Fee Amount** | |
| 1/4/21 | Telephone call and email communications with Client and co-counsel to discus pending Debtor's objections to claim and PPFN; Email communications Client's loan servicer, FCI Lender Services, re: supporting invoices. | 0.40 | $150.00 | |
| 1/8/21 | Draft Response to Claim Objection; Client's Declaration and attorney Declaration; Prepare Exhibit Documents | 3.30 | $1,237.50 | |
| 1/11/21 | Telephone calls and email communications with Client to discuss foreclosure invoices and amounts. Revise declaration and response to debtor's claim objection accordingly. Email communication to Debtor's counsel to request update on Debtor's efforts to sell the property. | 0.80 | $300.00 | |
| 1/14/21 | Advise Client and Client's loan servicer re: applying check payment from Chapter 13 Trustee payment, which represents Debtor's good faith payment as condition to continuing the hearing on Ch 13 Trustee's Motion to Dismiss case. Email Client re: completion of sale of Property; Prepare draft of Nagata declaration; Revise Anderson Declaration and Response. -------- [This time entry combined Plan adequate protection payment information, with the Trustee's motion to dismiss, and then the responses to the Objection to Claim.  Though Ms. Nagata has not provided a breakdown of the time for the three distinct tasks, given the nature of these items, the court allocates 0.50 hours to the Response to Objection to Claim = $187.50.] | Not Allowed 0.50 of 0.80 Billed | $187.50 | |
| 1/15/21 | Receipt/review multiple emails with Client and Tom Normandin re: revisions to response to Claim objection, supporting declaration; Review invoices | 0.70 hrs | $263.50 | |
| | | **Total Not Allowed Geraci Legal Corporation Objection to Claim Fees** | | |
| | | | **$2,138.50** | |

| | Prenovost, Normandin, Dawe & Rocha<br>January 18, 2021 Invoice | | Hourly Rate Billed<br>Tom Normandin....$350 | | | |
|---|---|---|---|---|---|---|
| | | | | | | |
| 1/4/21 | | REVIEW AND ANALYSIS OF PROOFS OF OBJECTIONS TO PROOFS OF CLAM REV I EW AND ANALYSIS OF RECENT CASE LAW ON SUBSTANTIAL COMPLIANCE WIT H PROOFS OF CLAIM; TELEPHONE CONVERSATION WIT H CLIENT REGARDING BACKGROUND | 2.30 | $805.00 | | |
| 1/08/21 | | REVIEW AND ANALYSIS OF NEW INVOICE TO BE INCLUDED IN PROOF OF CLAIM | .10 | $35.00 | | |
| 1/13/21 | | REVIEW AND ANALYSIS OF SECURED CREDITOR'S RESPONSE TO DEBTOR'S OBJECTION TO PROOF OF CLAIM 2 AND RELATED DECLARATION BY CLIENT | 1.40 | $490.00 | | |
| 1/14/21 | | REVIEW AND ANALYSIS OF LEGAL AUTHORITY OF AMENDING PROOFS CLAIM POST-PETIT ION ATTORNEY FEES | 2.80 | $980.00 | | |
| 1/14/21 | | REVIEW AND RE VI S E RESPONSE TO OBJECTION TO PROOF OF CLAIM | 3.50 | $1,225.00 | | |
| 1/14/21 | | COMMUNICATIONS WITH MARISOL REGARDING ANDERSON DECLARATION | 0.20 | $70.00 | | |
| 1/14/21 | | REVIEW AND ANALYSIS OF ANDERSON'S REVISED DECLARATION AND PAYOFF DEMAND | 0.40 | $140.00 | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| 1/15/21 | | FINALIZE ANDERSON DECLARATION OF ROGER ANDERSON | 1.00 | $350.00 | | |
| 1/15/21 | | FINALIZE RESPONSE TO OBJECTION TO PROOF OF CLAIM | 1.80 | $630.00 | | |
| 1/15/21 | | FINALIZE RESPONSE TO DEBTOR'S OBJECTION TO CLAIM AND PREPARATION OF E-MAIL TO CLIENT REGARDING RESPONSE AND PAYOFF DEMAND | 1.50 | $525.00 | | |
| 1/17/21 | | REVIEW AND ANALYSIS OF WELZEL CASE REGARDING TREATMENT OF FEES | 0.80 | $280.00 | | |
| 1/17/21 | | REVIEW AND REVISE RESPONSE TO OBJECTION PAPERWORK AND TELEPHONE CONVERSATION WITH CLIENT REGARDING SAME | 1.60 | $560.00 | | |
| 1/18/21 | | REVIEW AND REVISE MARISOL DECLARATION | 1.30 | $455.00 | | |
| | | | | **Total Not Allowed Prenovost, Normandin, Dawe & Rocha Objection to Claim Fees** | | |
| | | | | | **$6,545.00** | |
| | | | | | | |
| | | | | $8,683.50 | **Total Not Allowed Objection to Claim Fees** | |

## ADDENDUM D
## COMPUTATION OF LEGAL FEES NOT ALLOWED AS CREDITOR'S CLAIM
## AND INTEREST RELATING TO SUCH NOT ALLOWED FEES

| Date of Billing Invoice For Not Allowed Fees are Included in Mortgage Proof of Claim Attachment | April 25, 2020 (Entered on POC Claim Attachment on May 5, 2020) | June 25, 2020 (Entered on POC Claim Attachment on June 25, 2020) | August 25, 2020 (Entered on POC Claim Attachment on August 25, 2020) | September 15, 2020 (Entered on POC Claim Attachment on September 15, 2020) | October 1, 2020 (Entered on POC Claim Attachment on October 22, 2020) | November 12, 2020 (Entered on POC Claim Attachment on December 4, 2020) | December 1, 2020 (Entered on POC Claim Attachment on December 28, 2020) | December 22, 2020 (Entered on POC Claim Attachment on December 28, 2020) | January 15, 2021 (Entered on POC Claim Attachment on January 18, 2020) |
|---|---|---|---|---|---|---|---|---|---|
| Per Diem Interest Percentage 18% per annum, 30/360 | 0.05% | 0.05% | 0.05% | 0.05% | 0.05% | 0.05% | 0.05% | 0.05% | 0.05% |
| Per Month Interest at 18%, 30/360 simple interest (not compounded daily) | 1.50% | 1.50% | 1.50% | 1.50% | 1.50% | 1.50% | 1.50% | 1.50% | 1.50% |
| Not Allowed Attorney's Fee Amount | $450.00 | $937.50 | $405.00 | $180.00 | $60.00 | $735.00 | $475.00 | $915.00 | $9,028.50 |

**Computation of Compounded Interest on Fees Not Allowed as Part of Creditor's Claim Computed to February 2, 2021**

| | Monthly Interest | Not Allowed Fee Plus Compound Interest | Monthly Interest | Not Allowed Fee Plus Compound Interest | Monthly Interest | Not Allowed Fee Plus Compound Interest | Monthly Interest | Not Allowed Fee Plus Compound Interest | Monthly Interest | Not Allowed Fee Plus Compound Interest | Monthly Interest | Not Allowed Fee Plus Compound Interest | Monthly Interest | Not Allowed Fee Plus Compound Interest | Monthly Interest | Not Allowed Fee Plus Compound Interest | Monthly Interest | Not Allowed Fee Plus Compound Interest |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| April 2020 | $1.13 | $451.13 | | | | | | | | | | | | | | | | |
| May 2020 | $6.77 | $457.89 | | | | | | | | | | | | | | | | |
| June 2020 | $6.87 | $464.76 | $2.34 | $939.84 | | | | | | | | | | | | | | |
| July 2020 | $6.97 | $471.73 | $14.10 | $953.94 | | | | | | | | | | | | | | |
| August 2020 | $7.08 | $478.81 | $14.31 | $968.25 | $1.22 | $406.22 | | | | | | | | | | | | |
| September 2020 | $7.18 | $485.99 | $14.52 | $982.77 | $6.09 | $412.31 | $1.35 | $181.35 | | | | | | | | | | |
| October 2020 | $7.29 | $493.28 | $14.74 | $997.52 | $6.18 | $418.49 | $2.72 | $184.07 | $0.27 | $60.27 | | | | | | | | |
| November 2020 | $7.40 | $500.68 | $14.96 | $1,012.48 | $6.28 | $424.77 | $2.76 | $186.83 | $0.90 | $61.17 | $6.62 | $741.62 | | | | | | |
| December 2020 | $7.51 | $508.19 | $15.19 | $1,027.67 | $6.37 | $431.14 | $2.80 | $189.63 | $0.92 | $62.09 | $11.12 | $752.74 | $7.13 | $482.13 | $3.66 | $918.66 | | |
| January 2021 | $7.62 | $515.81 | $15.41 | $1,043.08 | $6.47 | $437.61 | $2.84 | $192.48 | $0.93 | $63.02 | $11.29 | $764.03 | $7.23 | $489.36 | $13.78 | $932.44 | $58.69 | $9,087.19 |
| February 2021 Interest Two (2) days | $0.52 | | $1.04 | | $0.44 | | $0.19 | | $0.06 | | $0.76 | | $0.49 | | $0.93 | | $9.09 | |
| Total Fee and Compound Interest Not Allows as Part of Creditor's Claim | $516.33 | | $0.00 | | $0.00 | | $0.00 | | $0.00 | | $0.00 | | $0.00 | | $0.00 | | $0.00 | |

**Breakdown of Fees and Compound Interest Not Allowed As Part of Creditor' Claim**

| | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Legal Fees Not Allowed As Part of Creditor's Claim | | $450.00 | | $937.50 | | $405.00 | | $180.00 | | $60.00 | | $735.00 | | $475.00 | | $915.00 | | $9,028.50 |
| Interest Not Allowed As Part of Creditor's Claim | $66.33 | | $106.62 | | $33.05 | | $12.67 | | $3.09 | | $29.79 | | $14.85 | | $18.37 | | $67.77 | |

| | |
|---|---|
| Total Legal Fees Not Allowed As Part of Creditor's Claim | $13,186.00 |
| Total Compounded Interest Relating to Legal Fees Not Allowed as Part of Creditor's Claim | $352.54 |

# ADDENDUM E

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF CALIFORNIA
## CIVIL MINUTES

---

**Case Title:** Timothy Tobias Trocke

**Case No.:** 20-21910 - E - 13

**Docket Control No.** FF-8

**Date:** 02/02/2021

**Time:** 2:00 PM

**Matter:** Supplemental Objection to Claim of Roger Anderson, Trustee of the RWA Trust, Claim Number 2-1 - [182] - Supplemental [170] Objection to Claim of Roger Anderson, Trustee of the RWA Trust, Claim Number 2-1 [FF-8] Filed by Debtor Timothy Tobias Trocke (tsef)

**Judge: Ronald H. Sargis**
**Courtroom Deputy: Nancy Williams**
**Reporter: Diamond Reporters**
**Department: E**

---

**APPEARANCES for:**
**Movant(s):**
 (by phone) Debtor's Attorney - Gary Ray Fraley
**Respondent(s):**
 (by phone) Trustee's Attorney - Neil Enmark; (by phone) Creditor's Attorney - Tom Roddy Normandin; (by phone) Creditor's Attorney - Marisol A. Nagata

---

### CIVIL MINUTES

HEARING TO BE HELD ON 4/20/2021 at 2:00 PM at Sacramento Courtroom 33, Department E

See Findings of fact and conclusions of law below

**The court will issue an order.**

Local Rule 3007-1 Objection to Claim—Hearing Required.

Sufficient Notice Provided. The Proof of Service states that the Objection to Claim and supporting pleadings were served on Creditor, Debtor, Chapter 13 Trustee, creditors, and Office of the United States Trustee on December 29, 2020. By the court's calculation, 35 days' notice was provided. 44 days' notice is required. FED. R. BANKR. P. 3007(a) (requiring thirty days' notice); LOCAL BANKR. R. 3007-1(b)(1) (requiring fourteen days' notice for written opposition). The Objection has been responded to and fully argued at the hearing. The court shortened the time to that provided.

The Objection to Claim has been set for hearing on the notice required by Local Bankruptcy Rule 3007-1(b)(1).  Failure of the respondent and other parties in interest to file written opposition at least fourteen days prior to the hearing as required by Local Bankruptcy Rule 9014-1(f)(1)(B) is considered to be the equivalent of a statement of nonopposition. *Cf. Ghazali v. Moran*, 46 F.3d 52, 53 (9th Cir. 1995) (upholding a court ruling based upon a local rule construing a party's failure to file opposition as consent to grant a motion).  The defaults of the non-responding parties and other parties in interest are entered.

**The Objection to Proof of Claim Number 2-1 of Roger Anderson, Trustee of the RWA Trust dated March 14, 2014 and the Supplemental Objection to the Notice of Postpetition Mortgage Fees, Expenses and Charges are sustained.**

**The hearing is continued to 2:00 p.m. on April 20, 2021,** for the court to conduct further proceedings on these Objections in this Contested Matter the as to the  itemizations filed with the Opposition to the Objection to for Proof of Claim 2-1 and the Notice of Postpetition Mortgage Fees, Costs, and Expenses

Timothy Tobias Trocke, the Chapter 13 Debtor, ("Objector") requests that the court disallow the claim of Roger Anderson, Trustee of the RWA Trust dated March 14, 2014 ("Creditor"), Proof of Claim No. 2 ("Claim"), Official Registry of Claims in this case.  The Claim is asserted to be secured in the amount of $126,635.02.  Objector asserts that the claim fails to satisfy the documents requirements of Federal Rule of Bankruptcy Procedure section 3001(c)(2).

On December 30, 2020 Objector filed a Supplemental Objection to Claim no. 2.  Dckt. 182.  Objector asserts that the "Notice of Postpetition Mortgage Fees, Expenses, and Charges" that was filed on December 21, 2020 as a supplemental claim altering Claim no. 2 for the additional amount of $24,335.40 fails to satisfy the documents requirements of Federal Rule of Bankruptcy Procedure section 3001(c)(2).

Debtor argues that in the interest of judicial economy and costs to all parties, that determination of all issues with respect to the Notice be heard as part of the original Objection to Claim filed on December 21, 2020 and set for hearing for February 2, 2021.

**REVIEW OF PROOF OF CLAIM 2-1**

The court begins with a review of Proof of Claim 2-1 which is signed by Creditor's counsel of record in this Contested Matter.  The court reviews Proof of Claim 2-1, considering each section of the Proof of Claim and attachments thereto.

A.  Parts 1 and 2 - Identify the Claims and Information About the Claim as of the Date the Case was Filed

    1.  Creditor is identified as "Roger Anderson, Trustee of the RWA Trust Dated March 14, 2014."

    2.  Creditor has not acquired the claim from anyone else.

    3.  Notices are to be sent to Debtor's counsel and payments made to "FCI Lender Services, Inc.," which is stated to have the same phone number and the email as that of Creditor's counsel (though a P.O. Box mailing address rather than Creditor's counsel's street address).

    4.  Proof of Claim 2-1 is the original claim filed (not amending a prior claim).

    5.  No prior proof of claim has been filed for this claim.

    6.  The last four digits of Debtor's account number is provided.

    7.  The claim is in the amount of $126,835.02, "plus 18% interest," with Creditor noting that the loan matures on September 1, 2021, which would be during the pendency of this bankruptcy case.

        a.  Creditor affirmatively states that the $126,835.02 amount includes interest or other chases and "Yes.  Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A)."   Creditor affirmatively states he knows what is required by the law and has complied with the law.

    8.  The basis of the claim is "Money loaned."

    9.  The Claim is secured by real estate.

        a.  It is perfected by "Deed of Trust (1671 Rosalind St., Sacramento California. 95838)."

        b.  Creditor does not state a value for the property securing the claim.

        c.  Creditor states that the "Amount of the claim that is $126,635.02* plus 18% interest."  By the "*" Creditor repeats that the loan matures in the future, September 1, 2021, "during the pendency of this case."  (It appears that the word "secured" before the dollar amount has been deleted from the proof of claim form used for Proof of Claim 2-1.)

        d.  The amount of the claim as unsecured is left blank.

      e.      Creditor then states that the amount necessary to cure any default that existed as of the April 1, 2020 filing of the current bankruptcy case is the full $125,635.02 amount for which Creditor restates that it does not mature until more than a year in the future on September 1, 2021.

      f.      Creditor fails to respond to the question requiring the interest rate to be stated and whether it is fixed or variable.

10.      Creditor states that the claim is not based on a lease.

11.      Creditor states that the claim is not subject to a right of setoff.

12.      Creditor states that this is not a priority claim.

Proof of Claim No. 2-1, Parts 1 and 2, identified by paragraph number in the Proof of Claim.

B.      Part 3 of Proof of Claim 2-1 is the signature by Counsel for Creditor, declaring under penalty of perjury that the information provided in Parts 1 and 2 are true and correct under penalty of perjury, with the date May 4, 2020, and provides law firm address.

C.      The Mortgage Proof of Claim Attachment is the first attachment to Proof of Claim 2-1.

      1.      In Part 1, Creditor states the Debtor's case number, identifies the Debtor, identifies the creditor and loan servicer, that it is a fixes accrual interest loan, and,

      a.      Provides the following required financial information about the loan:

      (1)      Principal Balance is $100,000,

      (2)      Accrued interest as of April 1, 2020 is $16,578.34,

      (3)      Fees, costs due are $10,056.68,

      (4)      The Total Debt is  "$126,635.02*," with the "*" tying to the following statement:

      (a)      "*Secured Creditor's Claim is approximately $126,635.02, plus 18% interest.  This loan is set to mature on 9/1/2021, during the pendency of Debtor's instant Chapter 13 bankruptcy case."

      (5)      The Total pre-petition arrearage is "$126,635.02*," with the "*" tying back to the statement that the $126,635.02 obligation does not mature until more than a year in the future.

      b.     The information not provided by Creditor in the Mortgage Proof of Claim Attachment includes:

          (1)     The pre-petition principal and interest arrearage,

          (2)     pre-petition fees due,

          (3)     Escrow deficiency,

          (4)     Projected shortage,

          (5)     Funds on hand,

          (6)     But, in this Part 3 of the Attachment Creditor does affirmatively state that all of the $126,635.02, for an obligation that matures September 1, 2021, more than a year in the future, is the entire pre-petition arrearage that must be paid by Debtor.

D.     No itemization of the fees, costs, expenses, charges, interest is provided by Creditor. But Creditor does affirmatively state, as part of this Proof of Claim under penalty of perjury, that the pre-petition arrearage is the entire $126,635.02 obligation that Creditor also states does not mature until September 1, 2021, more than a year after this case was filed.

E.     The next attachment is a copy of the $100,000.00 Promissory Note dated August 1, 2018. The note states that interest only payments of $833.33 are due on the Note, beginning October 1, 2018, until the Maturity Date of September 1, 2021. Note, ¶ 2.1. Debtor is also responsible for paying Creditor's loan servicer fees. *Id.*, ¶ 2.1.1.

F.     The final attachment to Proof of Claim 2-1 is a copy of a Deed of Trust recorded on August 8, 2018, given by Debtor to secure the obligation owed to Creditor.

     Thus, from Proof of Claim No. 2-1, one knows that Creditor asserts that the secured claim totals $126,635.02, which is comprised of $100,000.00 in principal, $16,578.34 in interest, and an additional $10,056.68 of non-specified fees and costs. With a monthly interest only payment of $833.33, then the $16,578.34 in pre-petition interest represents 19.89408757 months of default in such payments. It is not clear from Proof of Claim No. 2-1 why this is not a round number of months. Possibly interest is being charged against the $10,056.68 of non-specified fees and costs.

     That is the Proof of Claim Creditor presented to the court and Debtor, which elicited the present Objection to the $10,056.68 of non-specified costs and fees that are required to be specified in a proof of claim.

**REVIEW OF NOTICE OF POSTPETITION MORTGAGE FEES,**

**EXPENSES AND CHARGES (Filed December 21, 2020)**

Debtor has also objected to the Notice of Postpetition Mortgage Fees, Expenses and Charges based on the same grounds - Creditor has not provided the required itemization of such additional amounts.  The information provided in the Notice consists of:

    A.      Non-Escrow insurance advance of $1,298.23.

This amount is itemized and identified for Debtor.

    B.      Attorney's Fees totaling a post-petition amount of "See Below"

          1.      On the second page of the notice, after the signature block, the following typing appears:

                    a.      6/1/20 Attorney's Fees $5,898.75
                    b.      7/6/20 Attorney's Fees $81.19
                    c.      7/6/20 Attorney's Fees $2,516.81
                    d.      7/31/20 Attorney's Fees $1,629.08
                    e.      9/3/20 Attorney's Fees $3,498.59
                    f.      9/15/20 Attorney's Fees $1,806.08
                    g.      9/21/20 Attorney's Fees $2,349.00
                    h.      10/22/20 Attorney's Fees $4,856.17
                    i.      12/7/20 Attorney's Fees $413.50

While there is no breakdown of billing, as one would do for a fee application, there is an itemization that Creditor is asserting the right to recover the attorney's fees incurred on each of the days above.  Whether such amounts are reasonable could well be the subject of discovery, such as requesting a detailed time and billing report.

    C.      The Notice is signed by Creditor's Counsel.

**OPPOSITION BY CREDITOR**

Creditor hustled and filed an opposition not just to the original Objection, but the Supplemental Objection on January 19, 2021.  The opposition pleadings consist of:

    A.      Response to Objection to Claim, Dckt. 190 (11 pages),

    B.      Declaration of Creditor, Dckt. 191 (6 pages),

    C.      Exhibits to the Declaration of Creditor, Dckt. 192-197

          1.      Exhibits 1, 2, 3  are the loan documents.

2.      Exhibit 4 is the Notice of Default and Election to Sell and the Notice of Trustee's Sale.

3.      Exhibit 5 is an Invoice dated January 8, 2021 from California TD Specialists providing an itemization of the foreclosure costs and expenses totaling $3,755.48.

        a.      These costs run from the period August 19, 2019 through December 31, 2020.

4.      Exhibit 6 is a letter from Creditor's counsel's law firm to Debtor dated August 13, 2019.  It states that is it in response to a Notice of Recession given by Debtor.  There is also an October 22, 2019 transmittal letter from Creditor's counsel's law firm stating that copies of the executed loan documents were sent to Debtor.

5.      Exhibit 7 is an Order of Discharge and the Final Decree in Debtor's Chapter 7 case 19-27969.

6.      Exhibit 8 is the Schedules A/B-D from Debtor's Chapter 7 case.

7.      Exhibit 9 is a copy of Proof of Claim 2-1 filed by Creditor in this current Chapter 13 case.

8.      Exhibit 10 is a Statement Dated October 31, 2019, on OSC letterhead for forced plan insurance on Debtor's property, with a cost of $1,246.15.

9.      Exhibit 11 is the Notices of Postpetition Mortgage Fees, Expenses, and Charges filed in this Chapter 13 case by Creditor, and information for costs and expenses.

        a.      One filed on October 21, 202 stating that Debtor's owes $1,912.50 for attorney's fees incurred April 25, 2020.

        b.      One filed December 21, 2020, stating Debtor owes $1,286.23 for insurance advances and $23,049.17 in attorney's fees for a period running from June 1, 2020 through September 7, 2020.

        c.      Copy of a June 15, 2020 letter from Creditor stating that if proof of insurance is not provided, forced place insurance costing $1,246.75 will be obtained.

        d.      Billing statements by Creditor's counsel's law firm:

            (1)      April 10, 2020 - April 22, 2020....$1,912.50.

(2) April 27, 2020 - May 22, 2020.....$5,362.50

(3) May 28, 2020................................$75.00

(4) May 27, 2020 - June 17, 2020.....$2,325.00

(5) June 29, 2020 - July 24, 2020......$1,522.50

(6) July 27, 2020 - August 25, 2020....$3,322.50

(7) August 30, 2020 - Sept. 14, 2020....$1,725.00

(8) Sept. 14, 2020 - Sept. 17, 2020........$1,245.00

(9) Sept. 29, 2020 - Nov. 11, 2020.......$4,609.10

(10) Nov. 13, 2020 - Nov. 30, 2020.........$1,418.03

e. A Notice of Post Petition Mortgage Fees, Expenses, and Charges for additional attorney's fees of:

(1) December 22, 2020..............$1,927.50

(2) January 15, 2021.................$2,637.08

(3) January 18, 2021.................$6,650.00

f. Billing statements by Creditor's counsel's law firm:

(1) Nov 28, 2020 - Dec 22, 2020......$1,927.50

(2) Dec 29, 2020 - Jan 15, 2021.......$2,637.08

g. A Transaction Statement for Prenovost, Normandin, Daw & Rocha for the period January 4, 2021 through January 18, 2021, for $6,650.00.

h. Invoice from California TD Specialists for the period August 19, 2019 through December 31, 2020 for $3,755.48 (this appears to be a duplicate of above).

10. Exhibit 12 is a June 15, 2020 letter from Creditor to Debtor stating that there will be $1,246.75 in forced place insurance if Debtor does not provide proof of insurance.  (This appears to duplicate the letter above.)

**DISCUSSION**

Section 502(a) provides that a claim supported by a Proof of Claim is allowed unless a party in interest objects. Once an objection has been filed, the court may determine the amount of the claim after a noticed hearing. 11 U.S.C. § 502(b). It is settled law in the Ninth Circuit that the party objecting to a proof of claim has the burden of presenting substantial factual basis to overcome the prima facie validity of a proof of claim, and the evidence must be of probative force equal to that of the creditor's proof of claim. *Wright v. Holm (In re Holm)*, 931 F.2d 620, 623 (9th Cir. 1991); *see also United Student Funds, Inc. v. Wylie (In re Wylie)*, 349 B.R. 204, 210 (B.A.P. 9th Cir. 2006).

Once a party has objected to a proof of claim, the creditor asserting the claim may not withdraw the claim except on order of the court. FED. R. BANKR. P. 3006.

Federal Rule of Bankruptcy Procedure section 3001(c)(2) requires that creditor include or attach certain documents with their proof of claim in order to substantiate their claim. Specifically, FRBP section 3001(c)(2)(A) requires a creditor to provide "an itemized statement of the interest, fees, expenses, or charges." Additionally, pursuant to FRBP 3001(c)(2)(B) requires a creditor to provide "a statement of the amount necessary to cure any default as of the date of the petition." Finally, section 3001(c)(2)(C) requires a creditor with a secured claim over a debtor's principal residence, must attach the "appropriate official form."

Here, Proof of Claim 2-1 did suffer from failure to itemize the various expenses and charges.

For a Notice of Postpetition Mortgage Fees, Expenses and Charges, the Bankruptcy Rules impose a similar requirement. Federal Rule of Bankruptcy Procedure 3002.1(c) provides:

(c) Notice of Fees, Expenses, and Charges. The holder of the claim shall file and serve on the debtor, debtor's counsel, and the trustee a notice itemizing all fees, expenses, or charges (1) that were incurred in connection with the claim after the bankruptcy case was filed, and (2) that the holder asserts are recoverable against the debtor or against the debtor's principal residence. The notice shall be served within 180 days after the date on which the fees, expenses, or charges are incurred.

Here, a review of the Notice filed on December 21, 2020 shows that, though including the amounts allegedly owed, the Notice does not contain supplemental documents itemizing the fees, expenses or charges. Thus, the December 21, 2020 Notice fails to meet the requirements of FRBP 3002.1.

In the responsive pleadings, there appears to be itemizations for Debtor and his counsel to review.

Creditor filed Amended Proof of Claim 2-2 on January 26, 2021.  The Official Form for a mortgage is still not properly completed, but is followed by six (6) pages breaking down account activity from August 7, 2018 through January 21, 2021.  Creditor also filed an Amended Notice of Postpetition, Mortgage Fees, Expenses, and Charges on January 19, 2021.  This amended Notice, also attached to amended Proof of Claim 2-2, provides a billing summary of attorney's fees and an invoice listing the different charges related to the loan since August 2019 through December 2020.

As addressed above, Proof of Claim 2-1 suffers from shortcomings and some clearly inaccurate statements under penalty of perjury (such as the entire obligation must be paid to cure the pre-petition arrearage).  Creditor, and counsel, may feel frustrated that Debtor has elected to go through multiple bankruptcies, but such is not an excuse.

Looking at the Opposition filed, it appears to outweigh the simple Objection – No Itemization Has Been Provided.

Conversely, Debtor has "prosecuted" this case in a frustrating manner.  This Chapter 13 case was filed on April 1, 2020, and it was clear Debtor would be challenged in paying his way out of the financial hole without promptly selling the Property securing Creditor's claim.  Debtor was purportedly funding his plan through gifts and renting out a room to his girlfriend's sister.  Other than $942 a month in Social Security, Debtor had no income.  Amended Schedule I, Dckt. 34.  On Amended Schedule J Debtor purported to have only $928 in expenses.  Dckt. 35.  This was so low because Debtor had no housing cost (mortgage/rent), no home maintenance expense, no property taxes, no insurance, no transportation expense, and no medical expense.  *Id.*

As Debtor attempted to fight off Creditor's Motion for Relief From the Stay, the court had the opportunity to comment about Debtor's conduct,

Questionable Prosecution of Case

A review of the Docket indicates that notwithstanding Debtor's Counsel arguing that the Property was "put on the market on September 27, 2020, and a offer was received on October 16, 2020," Debtor has not sought to obtain authorization to employ a real estate broker (such authorization necessary for such professional to be compensated for the services provided), nor has the Debtor filed a motion for authorization to sell the property for a sale Debtor hopes to quickly close.

Ignoring these legal requirements under the Bankruptcy Codes is not indicative of a Debtor who is diligently pursuing a sale in good faith
. . .
However, Debtor has demonstrated that he does not have the financial and business knowledge to prosecute this case (the court giving the Debtor and Counsel the benefit of the doubt that the failure to obtain authorization to employ a real estate broker was mere inadvertence and not part of a scheme to get "free" real estate broker services). At this juncture, it appears the court has three choices:

1. Grant Relief From the Stay and Allow Movant, who clearly knew that this Debtor would not be able to pay the loan back, to foreclose and take nearly $100,000 in equity as a "bonus" for having made a loan with an 18% interest rate;

2. Order the appointment of a personal representative as provided in Federal Rule of Civil Procedure 25, as incorporated into Federal Rules of Bankruptcy Procedure 7025 and 9014, and then have that personal representative hire legal counsel to prosecute the sale of the Property, pay the claims in this case, and "save" for Debtor his exempt equity (after paying the costs and expenses of the personal representative and the professionals hired by the personal representative); or

3. Convert this case to Chapter 7, in which Debtor could not get a discharge in light of his December 2019 Chapter 7 case in which he was granted a discharge, and have the Chapter 7 trustee conduct hire the professionals, conduct the sale, have all of the trustee's and trustee's professionals expenses and fees paid, and "save" the debtor the equity in the property.

Though normally the court would order a debtor in this situation to make adequate protection payments from the monthly plan payments, Debtor's defaults have documented that he is bereft of the financial ability to pay. As show on the original and various amended Schedules I filed in this case, Debtor has no income and is dependant upon gifts from his significant other and his sister to survive from day to day. See latest Amended Schedule I; Dckt. 83, in which Debtor lists having $942 a month in Social Security, which is only 22.7% of his stated monthly income. His sister provides $1,760, which is 42% of the stated monthly income, and his significant other provides $942 (exactly the same as the stated amount of Social Security benefit received), which is an additional 22.7%. The balance of monthly income is stated to be $500 in room rent paid by "Girlfriend's Sister").

Civil Minutes, Dckt. 127.  (Debtor's counsel did notify the court that in November 2020 Debtor suffered a heart attack and was hospitalized, which restricted counsel's ability to communicate with Debtor for a period of time.)

At the hearing, the court addressed with the Parties bifurcating the current objections. Phase 1, the Objection to Proof of Claim 2-1 and the **"Notice of Postpetition Mortgage Fees, Expenses, and Charges** being sustained due to the failure of Creditor to provide the required itemizations in support of both.

However, in light of Creditor having now provided such itemizations in Opposition to this Objection, to save the Parties the cost in time and money of sustaining the objection with leave to file an amended claim, then having a possible second objection and all of the pleadings already filed by Creditor recreated, the court, with the Parties concurrence, has set further hearing on "Phase 2" of the Objections - that being the Debtor filing objections, if any, to the Proof of Claim based on the itemizations provided in the Opposition.

The Briefing Schedule for Phase 2, the Objection to Fees and Costs as itemized in the Opposition to this Objection, is as follows:

On or before March 2, 2021, Debtor shall file supplemental pleadings, if any, objecting to the fees, costs, and expenses requested by Creditor as part of its claim and documented in the itemizations filed in Opposition to these Objections.  Creditor shall file supplemental opposition pleadings thereto on or before March 23, 2021; and Debtor shall file and serve a Reply, if any, on or before March 30, 2021.

# ADDENDUM E

## UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| In re | ) | Case No. 20-21910 - E - 13 |
| Timothy Tobias Trocke, | ) | Docket Control No. FF-8 |
| Debtor. | ) | Document No. 182 |
| | ) | Date: 02/02/2021 |
| | ) | Time: 2:00 PM |
| _____ | ) | Dept: E |

### Order

Findings of Fact and Conclusions of Law are stated in the Civil Minutes for the hearing.

The Objection to Claim No. 2-1 and the Notice of Postpetition Mortgage Fees, Expenses, and Charges filed by Roger Anderson, Trustee of the RWA Trust dated March 14, 2014 ("Creditor"), having been presented to the court, and upon review of the pleadings, evidence, arguments of counsel, and good cause appearing,

**IT IS ORDERED** that the Objections to both Proof of Claim 2-1 and the Notice of Postpetition Mortgage Fees, Expenses, and Charges (filed on December 21, 2020) based on the failure to provide the itemizations of fees, costs, and expenses as required by the Federal Rules of Bankruptcy Procedure are sustained. The court so orders pursuant to Federal Rule of Civil Procedure 56(a), (g), and Federal Rules of Bankruptcy Procedure 7056 and 9014(c), and the final order for such relief shall be in one final order issued after the additional hearings below.

**IT IS FURTHER ORDERED** that the hearing is continued to **2:00 p.m. on April 20, 2021**, for the court to conduct further proceedings on these Objections to address the in this Contested Matter the itemizations for Proof of Claim 2-1 and the Notice of Postpetition Mortgage Fees, Costs, and Expenses ("Notice of Fees") that Creditor filed in Opposition to the Objections. Such procedure, as agreed by the Parties at the February 2, 2021 hearing, will reduce costs and expenses, and avoid Creditor having to file an amended claim, refile the itemizations, and necessitate, if Debtor believes objections to any of the itemized amounts is warranted.

Supplemental Objection to Claim of Roger Anderson, Trustee of the RWA Trust, Claim Number 2-1 - [182] - Supplemental [170] Objection to Claim of Roger Anderson, Trustee of the RWA Trust, Claim Number 2-1 [FF-8] Filed by Debtor Timothy Tobias Trocke (tsef)

**IT IS FURTHER ORDERED** that on or before March 2, 2021, Debtor shall file and serve  Supplemental Objection to Claim and Notice pleadings, if any, objecting to fees, costs, and expenses requested by Creditor as part of its claim and documented in the itemizations filed in Opposition to these Objections.  Creditor shall file supplemental opposition pleadings thereto on or before March 23, 2021; and Debtor shall file and serve a Reply, if any, on or before March 30, 2021.

**Dated:**  February 11, 2021

By the Court

Ronald H. Sargis, Judge
United States Bankruptcy Court

# Instructions to Clerk of Court
## Service List - Not Part of Order/Judgment

**The Clerk of Court is instructed to** send the Order/Judgment or other court generated document transmitted herewith *to the parties below*. The Clerk of Court will send the document via the BNC or, if checked _____, via the U.S. mail.

| **Debtor**(s) | **Attorney for the Debtor**(s) (if any) |
|---|---|
| **Bankruptcy Trustee** (if appointed in the case) | Office of the U.S. Trustee<br>Robert T. Matsui United States Courthouse<br>501 I Street, Room 7-500<br>Sacramento, CA 95814 |
| **Attorney for the Trustee** (if any) | Tom R. Normandin, Esq.<br>2122 North Broadway, Ste. 200<br>Santa Ana, CA 92706-2614 |